Filed 02/14/2017

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042086 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1487274) |
| v. | |
| JOSEPH LEON DILLARD, | |
| Defendant and Appellant. | |

The trial court denied defendant's motion to withdraw a no contest plea to human trafficking of a minor, finding that the probation conditions set forth in Penal Code section 1203.067 were not direct consequences of defendant's plea and thus had not required a pre-plea advisement under *Bunnell v. Superior Court* (1975) 13 Cal.3d 592 (*Bunnell*). The court denied the motion for the additional reason that defendant failed to establish prejudice. Defendant challenges that ruling, and raises ineffective assistance of counsel as a separate basis for withdrawing the plea. Finding no error, we will affirm the judgment.

## I. BACKGROUND

### A. ARREST, SURRENDER, AND CHANGE OF PLEA

Defendant was arrested in June 2014 following an undercover sting operation conducted by the Mountain View Police Department and the FBI. According to the probation report, officers contacted a 16-year-old female offering sexual services through an online advertisement. The minor agreed to meet an undercover officer at a hotel and have sexual relations for $500. She was arrested inside the hotel after making sexual

advances toward the officer.  Defendant, who drove the minor to the hotel, was approached by officers as he waited in the parking lot.  He admitted dropping off the minor and said he was watching out for her.  He said he had met the minor online a few months earlier, he could not remember who posted her online advertisement, he knew nothing about her services, and he would never hurt her.

Defendant was charged with human trafficking of a minor.  (§ 236.1, subd. (c).)[1] A bench warrant was issued when he failed to appear for arraignment on the criminal complaint.  Represented by retained counsel, defendant surrendered in court ten weeks later and was taken into custody.  Three weeks after that, he entered an open no contest plea to the complaint, thereby declining the prosecution's five-year statutory minimum prison term offer.  The court indicated that it would suspend execution of an eight-year middle term sentence and place defendant on three years' probation including one year in county jail, subject to "all other legal and appropriate terms and conditions of probation." Defendant signed a waiver of rights form on which he initialed the following statements: (1) "I understand the court is not required to follow any tentative, indicated sentence[,]" (2) "If I am placed on probation or mandatory supervision, I understand the Court will impose additional conditions that are reasonably related to the charges to which I am pleading guilty or no contest or to future criminality[,]" and (3) "I understand I must register, and maintain and update my registration, with the police as a [¶] sex offender – I understand this registration requirement is for life."  Defendant responded affirmatively when the trial court asked whether he read and understood the plea form with counsel's assistance, and whether he understood the potential consequences of the plea as described on the form and discussed in court.

---

[1] Statutory references are to the Penal Code.

**B.      MOTION TO WITHDRAW PLEA**

When the parties appeared for sentencing, defendant was granted a continuance to seek further advice on the section 290 registration requirements.  Shortly thereafter, he retained new counsel who filed a motion to withdraw the plea based on former counsel's failure to inform defendant of the direct consequences of the plea.  Defendant argued that former counsel did not advise him of the sex offender program described in section 1203.067, subdivision (b),[2] nor that his housing and internet usage would be restricted by conditions of probation.  The district attorney opposed the motion with a declaration from defendant's former counsel, and a hearing was held.

**1.      Former Counsel's Testimony**

Counsel testified that he had met with defendant twice, for a total of four hours, a few weeks before defendant surrendered.  At those meetings, defendant told counsel about potential criminal charges stemming from a Berkeley investigation where he was allegedly "pimping and pandering the same minor victim."  Defendant had been placed in a drug diversion program in Alameda County in a different case, and he was currently on warrant status in that matter.  Defendant expressed fear of incarceration, and his primary objective in meeting with counsel was to strategize the best way to resolve the pending matters with minimal or no incarceration.

Counsel described defendant's belief that the minor likely would appear in court and testify against him.  Given the minor's anticipated cooperation with the prosecution and the possibility of duel prosecutions, the potential for a considerable prison term was a

---

[2] Penal Code section 1203.067 mandates that a defendant convicted of an offense requiring registration under section 290 and placed on formal probation after July 1, 2012 successfully complete an approved sex offender management program.  (§ 1203.067, subd. (b)(2).)  As part of the program, the defendant is required to waive any privilege against self-incrimination and participate in polygraph examinations.  (*Id.*, subd. (b)(3).)  The defendant is also required to waive any psychotherapist-patient privilege to enable communication between the treatment professional and the probation authorities.  (*Id.*, subd. (b)(4).)

3

legitimate and serious concern. Defendant asked counsel about a suspended sentence to "hang time over [his] head." Counsel was not optimistic about that type of disposition, but he agreed to ask for it.

Counsel informed defendant at both meetings of the mandatory registration requirements under section 290, specifically that (1) it was a lifetime registration requirement, (2) he would be listed in a searchable internet database as a sex offender, and (3) he would be restricted from living next to a park or school. He advised defendant that the court or probation could place restrictions on his internet usage and living arrangement, but he should be able to live with his children. He advised defendant that probation could impose additional onerous requirements, including sex offender treatment and counseling, and that he would have to "jump through hoops" if granted probation, but defendant was not interested in clarifying or further discussing those conditions because he was more concerned with a potential prison sentence. Counsel told defendant he (counsel) would be "king of the world" if they were lucky enough to get probation.

Counsel spoke with defendant after he was taken into custody, but all defendant was interested in was his release; he did not ask about section 290 registration or sex offender treatment programs. Counsel was not aware that section 1203.067 contained mandatory probation conditions; he did not inform defendant of the sex offender management program requirements, including polygraph testing and waiving the psychotherapist-patient privilege.

On the plea date, defendant was "happy as a kid in a candy factory" with the indicated grant of probation. Both he and counsel "thought it was a great deal." Counsel and his intern spent two hours reviewing the plea form in detail with defendant before he changed his plea, and counsel answered each and every question defendant asked. Defendant had no questions about section 290: "He was not interested, did not care. He got what he wanted."

4

Counsel described defendant as stubborn but intelligent. He asked many questions, and was not someone who would allow an attorney to pressure him into anything. Counsel never forced or pressured defendant to change his plea. Counsel's understanding, from the beginning of the case until the sentencing date, was that defendant "was willing to accept any terms and conditions of probation or parole so long as he had minimal incarceration periods."

Defendant, who first saw the probation report at the sentencing hearing, was as surprised as counsel to learn that the victim was not cooperating with the prosecution. The report stated that correspondence had been sent to the victim about sentencing and restitution, and a phone message had been left with the victim's mother to contact the probation officer, but neither the victim nor her mother had responded. Only after receiving that information did defendant express any concern with the probation conditions listed in the report, or with proceeding to sentencing at that time. Counsel had not anticipated defendant's request for more time to review the probation conditions because counsel felt defendant understood them, "knew it was coming," and did not care about them since his concern had been "no jail time." After reviewing the probation report, defendant "basically felt as if since the victim is not going to show or not going to cooperate, I can beat the case. I cannot have this conviction on my record. And I can walk away Scott [*sic*] free[.]"

### 2. Defendant's Testimony

In contrast to the testimony of his former counsel, defendant testified that minimizing jail time was "somewhat of a concern," but from the beginning his main concern was section 290. Counsel did not discuss Megan's law, residency restrictions, internet restrictions, or treatment programs; he only told defendant he "would have to register [his] address." Defendant constantly asked for clarification regarding section 290. Counsel did not answer all his questions, and he failed to send defendant literature on section 290 which he had requested from jail. Defendant learned of

5

additional probation restrictions—not living with minors, taking a polygraph test, and providing internet account information to probation authorities—by reading the probation report the day he was supposed to be sentenced. Had he known about those conditions he would not have agreed to them "because that essentially would make me homeless. And that -- how my source of income comes from ads online. And I expressed concerns about a lot of the conditions, a lot of stuff that had to do with me -- the terms that was in the probationary report."

Having read the probation report a couple of times, defendant did not see where it said the victim was not cooperating. He did not know why counsel told him the victim was being uncooperative, and he was not trying to withdraw his plea based on that information.

### 3.    Ruling

After reviewing defendant's motion, declaration, and testimony, the trial court denied the motion. In its oral pronouncement, the court found that defendant had been sufficiently informed of the section 290 registration requirements, including that they would apply to him for life, based on his conversations with counsel. The court rejected the argument that the objectionable probation conditions, whether mandatory or discretionary, were direct consequences of defendant's plea, given that he had entered an open plea, had a choice to accept or reject probation, and had been advised that he would be subjected to reasonable probation conditions. Further, the court found that defendant failed to show he would not have entered his plea had he been aware of the polygraph requirement or better understood the internet and residency restrictions. The court found nothing in defendant's declaration or testimony "that specifically addresses why [he] would be so offended by submitting to polygraph testing that he would not have taken the disposition that he entered into with the indicated sentence" given the prosecution's offer of a five-year prison term.

6

The court found credible counsel's testimony that defendant's primary concern was his custodial status and achieving a disposition with minimal incarceration. It noted counsel's testimony was corroborated by (1) defendant's failure to appear for his continued arraignment after being informed by the court at his first appearance that he would likely be remanded at that time, (2) defendant's remaining at large for two months before surrendering, (3) defendant's declaration, in which he described a meeting with counsel who "would work to get me a deal that would get me out of jail as soon as possible," and (4) defendant's statement to the probation officer that he did not enjoy being in custody and intended to complete probation without any problems. The court also observed that counsel, faced with the prosecution's offer, had approached the court about an indicated suspended sentence with a county jail term in lieu of prison.

Given that defendant had remained at large for two months during which time he met with counsel to address all pending matters and prepare himself for surrender, the court found not credible defendant's statements that he had admitted the charges without any real time to consult, deliberate, or prepare, and that his plea was not entered freely. Based on the totality of the circumstances, the court found that defendant's change of plea was knowing, voluntary, and intelligent, and that he failed to establish prejudice from any defects in the advisements given to him.

## C.  SENTENCING

The court suspended execution of an eight-year prison term and placed defendant on formal probation for three years. As conditions of probation, defendant was ordered to serve 12 months in county jail and complete the sex offender management program mandated by section 1203.067. He was restricted from living with minors, other than his biological children, unless approved by his probation officer. He was ordered to provide his probation officer with passwords to all personal e-mail addresses and any password-restricted websites, and he was prohibited from accessing the internet without his probation officer's prior approval.

7

## II. DISCUSSION

A change of plea must be voluntary and intelligent, with a defendant being advised of his or her constitutional rights, and of the direct consequences of the conviction. (*Boykin v. Alabama* (1969) 395 U.S. 238, 243–244; *Bunnell, supra,* 13 Cal.3d. at pp. 604–606.) No advisement is required for collateral consequences. (*People v. Gurule* (2002) 28 Cal.4th 557, 634.) The requirement that a trial court advise on direct consequences of a conviction is a judicially mandated rule of criminal procedure. (*People v. Moore* (1998) 69 Cal.App.4th 626, 630.) The rule " 'encompasses only primary and direct consequences of a defendant's impending conviction as contrasted with secondary, indirect or collateral consequences.' [Citation.] The advice requirement generally extends only to 'penal' consequences [citations] which are 'involved in the criminal case itself' [citation]. [¶] A consequence is deemed to be 'direct' it if has ' " 'a definite, immediate and largely automatic effect on the range of the defendant's punishment.' " ' [Citation.]" (*Ibid*.)

A court may permit a guilty or no contest plea to be withdrawn "for good cause shown." (§ 1018; *People v. Archer* (2014) 230 Cal.App.4th 693, 702.) " 'Good cause' means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence." (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.) A defendant seeking to withdraw a plea based on the failure to advise on the direct consequences of a conviction must show actual ignorance of those consequences. (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1619.) The defendant also must show prejudice in the form of a reasonable probability that he or she would not have entered the plea had a proper advisement been given. (*In re Moser* (1993) 6 Cal.4th 342, 352; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 210; *People v. McMillion* (1992) 2 Cal.App.4th 1363, 1370.) A plea may not be withdrawn simply because a defendant has changed his or her mind. (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)

In ruling on a motion to withdraw a plea, the trial court may take into account the defendant's credibility and his or her interest in the outcome of the proceedings. (*People v. Ravaux*, *supra*, 142 Cal.App.4th at p. 918.) We will defer to a trial court's credibility determinations that are supported by substantial evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 444.) We review the denial of a motion to withdraw a plea for an abuse of discretion. (*People v. Wharton* (1991) 53 Cal.3d 522, 585 [" 'An appellate court will not disturb the denial of a motion unless the abuse is clearly demonstrated.' "].)

## A. ADEQUACY OF *BUNNELL* ADVISEMENT

Defendant contends the mandates of section 1203.067, subdivision (b) are a direct consequence of a plea to a registerable sex offense for which probation is granted, requiring an advisement under *Bunnell*. He argues that the failure of the trial court and former counsel to advise him of the section 1203.067 requirements constituted error under *Bunnell* and good cause to withdraw his plea, and that he was prejudiced by the error.[3]

According to defendant, "where the legislature has codified a mandatory and immediately implementable consequence to a particular plea, the consequence has been deemed direct." In support he identifies several direct consequences flowing from statutory mandates, including the permissible range of punishment (*Bunnell*, *supra*, 13 Cal.3d at p. 605), lifetime sex offender registration (*People v. McClellan* (1993) 6 Cal.4th 367, 376; *People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1481), the minimum and maximum restitution fine (*People v. Villalobos* (2012) 54 Cal.4th 177, 186), a mandatory parole period (*In re Moser*, *supra*, 6 Cal.4th at pp. 351–352; *In re Carabes* (1983) 144 Cal.App.3d 927, 930–931), and mandatory revocation of a driver's license

---

[3] Defendant does not challenge the denial of his motion based on deficient advisements concerning restricted residency and internet usage. His appeal is limited to the failure to advise on the mandatory sex offender management program requirements.

9

(*People v. Dakin* (1988) 200 Cal.App.3d 1026, 1033). A defendant also must be advised of probation ineligibility. (*People v. Caban* (1983) 148 Cal.App.3d 706, 711.)

Defendant cites no cases holding that conditions of probation are direct consequences of a conviction, and the only line of cases we have found addressing probation conditions does not support defendant's view. In *People v. Goulart* (1990) 224 Cal.App.3d 71, the court concluded in the context of a *Harvey* waiver[4] that restitution as a condition of probation is not a penal consequence of a guilty plea, and therefore a defendant "need not be informed he could be ordered to pay restitution as a condition of probation before the court accepts his guilty plea[.]" (*Id*. at pp. 80–81; accord *People v. Campbell* (1994) 21 Cal.App.4th 825, 829–830; *In re I.M*. (2005) 125 Cal.App.4th 1195, 1210.) The court reasoned that probation " 'is an act of leniency, not a matter of right,' " and that probation "as a sentencing alternative typically contains conditions[.]" (*Goulart*, at p. 80.)

In our view, the relevant inquiry is not whether a probation condition is legislatively mandated. To be a direct consequence of a *conviction*, the consequence must have a definite and largely automatic effect on the range of defendant's *punishment*. (*People v. Moore*, *supra*, 69 Cal.App.4th at p. 630.) The probation conditions at issue here were not a definite or an automatic result of defendant's conviction because probation did not automatically flow from his open plea. Nor were the conditions a definite or automatic consequence of the conviction because, as the *Goulart* court observed, probation was an optional sentencing alternative which defendant was free to reject. Additionally, the sex offender management program is designed to foster rehabilitation and deter future sexual victimization through supervision and specialized

---

[4] *People v. Harvey* (1979) 25 Cal.3d 754. A *Harvey* waiver allows the sentencing judge to consider a defendant's entire criminal history, including any unfiled or dismissed charges. (*Goulart*, *supra*, 224 Cal.App.3d at p. 80.) For the waiver to be effective, the court must advise the defendant of the penal consequences of the guilty plea. (*Ibid*.)

10

treatment (§§ 1203.1, subd. (j); 9000, subd. (d)); the program is not within the range of a defendant's punishment, nor does it otherwise constitute a sanction akin to punishment, as is the case with registration under section 290. (*People v. Zaidi*, *supra*, 147 Cal.App.4th 1470, 1482.) Unlike defendant's lifetime sex offender registration, the public is not privy to his participation in the sex offender treatment program, and the program does not extend beyond his probation term.

## B.    DEFENDANT DID NOT SHOW PREJUDICE

We will uphold the trial court's ruling for the additional reason that defendant failed to show prejudice, even if the sex offender management program were deemed a direct consequence of his conviction. Defendant argues that he established prejudice because (1) he moved to withdraw his plea promptly after becoming aware of the requirements of section 1203.067, (2) he testified he would not have entered a no contest plea had he been properly advised of those requirements, and (3) the California Supreme Court has granted review to address the constitutionality of the program conditions mandated by section 1203.067, subdivisions (b)(3) and (b)(4).[5]

The timeliness of defendant's motion, which no one disputes, is unrelated to the prejudice inquiry—that is, whether he would have entered a no contest plea had he been advised of the mandatory probation conditions under section 1203.067. In addition to finding defendant's testimony not credible, a finding to which we must defer (*People v. Boyer*, *supra*, 38 Cal.4th at p. 444), the trial court found that defendant failed to explain why required polygraph testing would have caused him to forgo a probation opportunity, given the prosecution's offer of the statutory minimum five-year prison term. (§ 236.1, subd. (c)(1).) According to defendant's former counsel, whose testimony the court found

---

[5] In *People v. Friday*, review granted July 16, 2014, S218288, *People v. Garcia*, review granted July 16, 2014, S218197, and *People v. Klatt*, review granted July 16, 2014, S218755, the Supreme Court is reviewing the constitutionality of the requirements to waive the privilege against self-incrimination, to waive the psychotherapist-patient privilege, and to submit to polygraph testing.

11

credible, defendant believed it was likely that the minor would testify against him at trial. Defendant expressed no concern regarding other aspects of the sex offender management program, including their constitutionality. There was no credible evidence presented that knowledge of the sex offender management program conditions would have caused defendant to forgo the open plea and indicated sentence. Given (1) the prosecution's prison offer, (2) the possibility of joinder of the Berkeley case, (3) the likelihood of a cooperative victim, and (4) the court's credibility determinations, defendant has failed to show that the trial court abused its discretion in finding no prejudice.

In his reply brief, defendant suggests that the trial court applied an incorrect clear and convincing evidence standard rather than a reasonable probability standard to the prejudice question. We note that both standards have application here: Clear and convincing evidence to establish *Bunnell* error (assuming advisement is required under *Bunnell*), and a reasonable probability of a more favorable outcome to establish prejudice and entitlement to relief.

We recognize that a passage from the court's oral ruling—"any defects in advisement given to [defendant] by his prior counsel or by the Court do not rise to the level of clear and convincing evidence that he has suffered any prejudice"—can be read as conflating the standards. But the trial court's reference to the clear and convincing standard does not require reversal here because the record clearly demonstrates that defendant did not establish prejudice under the reasonable probability standard. The trial court did not believe defendant. It believed counsel, who testified that defendant (1) would have accepted any probation conditions to avoid a prison sentence, and (2) only expressed concern with the sex offender management program after learning that the minor and her mother had not responded to the probation officer's communications. Counsel's testimony all but forecloses any likelihood that defendant would have aborted his change of plea had he been aware of the sex offender management program conditions.

12

## C.    COUNSEL WAS NOT INEFFECTIVE

Defendant argues for the first time on appeal that he entered a no contest plea as a result of ineffective assistance of counsel. An ineffective assistance claim requires a showing that counsel's performance fell below an objective standard of reasonableness and that defendant was prejudiced by the deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish prejudice based on incompetent advice regarding whether to plead guilty, the defendant must show "a reasonable probability that, but for counsel's incompetence, [he or she] would not have pleaded guilty and would have insisted on proceeding to trial." (*In re Alvernaz* (1992) 2 Cal.4th 924, 934.)

Defendant asserts that counsel failed to competently investigate the facts and the law in the case, relying on the testimony counsel provided at the hearing on the motion to withdraw the plea. According to defendant, counsel's failure to offer an assessment as to whether the minor qualified as a victim of human trafficking or whether defendant had the specific intent to commit the offense demonstrates incompetence. Based on the testimonial void, defendant asserts "a potentially meritorious [innocence] claim" and the denial of "any accurate insight into the assessment" of the case.

We find no deficient performance on this record. Counsel's testimony does not establish any deficient factual assessment, much less an innocence defense. Defendant's motion to withdraw his plea did not assert assessment deficiencies regarding evidence of specific intent or the minor's status as a human trafficking victim, and counsel's testimony was limited to addressing defendant's discrete claim that he was not properly advised of the consequences of his plea. The record shows that counsel evaluated the case with defendant before he surrendered, reviewing each element of the offense as set forth in the jury instructions. Defendant's understanding of the facts was consistent with the discovery, and defendant had expressed his belief that the minor would testify for the prosecution.

13

Defendant claims counsel was unaware that mistake of a human trafficking victim's age is not a defense under section 236.1, subdivision (f), pointing to counsel's testimony that mistake of fact would not have been an available defense because defendant had been informed of the minor's age by law enforcement in Los Angeles before his Mountain View arrest. Even if counsel thought mistake of fact as to the minor's age were a defense, that misunderstanding would not constitute incompetent advice regarding defendant's change of plea. Defendant's actual knowledge of the minor's age imparted by law enforcement only strengthened the prosecution's case.

Defendant claims that he could have taken the case to trial and avoided sex offender registration (and the sex offender management program) considering the deficiencies in the prosecution's case. Given his failure to establish those deficiencies, his claim that he was prejudiced by forgoing the opportunity to expose them also fails.

## III. DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Rushing, P. J.



_____

Walsh, J.[*]


*People v Dillard*
**H042086**

_____

[*]Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| Trial Court: | Santa Clara County Superior Court, Case No.: C1487274 |
|---|---|
| Trial Judge: | Hon. Daniel T. Nishigaya |
| Attorneys for Plaintiff/Respondent: The People | Xavier Becerra<br>  Attorney General of California<br>Gerald A. Engler<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Catherine A. Rivlin<br>  Supervising Deputy Attorney General .<br>Allan Yannow<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant: Joseph Leon Dillard | Manisha Daryani<br>  Law Offices of Robert Beles |

*People v Dillard*
**H042086**