Filed 6/7/21  P. v. Sensabaugh CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEVEN DAMIEN SENSABAUGH,<br><br>    Defendant and Appellant. | F081353<br><br>(Super. Ct. No. F17900851)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ross K. Naughton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Detjen, J. and DeSantos, J.

Defendant Steven Damien Sensabaugh pled no contest to six sex offenses. He contends on appeal that the trial court abused its discretion in refusing to permit him to withdraw his pleas. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On November 26, 2019,[1] the Fresno County District Attorney filed an amended complaint charging defendant with 21 sex offenses against Jane Doe, a child under 14 years of age, between June 1, 2016, and February 7, 2017. Specifically, the amended complaint charged one count of contact with a minor with intent to commit a sex offense (Pen. Code, § 288.3, subd. (a);[2] count 1), four counts of committing lewd acts upon a child (§ 288, subd. (a); counts 2, 11, 14 & 17), four counts of forcible rape of a child under 14 years of age (§ 261, subd. (a)(2); counts 3, 12, 15 & 18), six counts of aggravated sexual assault of a child (§ 269, subd. (a); counts 4, 7, 10, 13, 16 & 19), one count of sodomy of a person under 14 years of age (§ 286, subd. (c)(1); count 5), one count of sodomy by force of a person under 14 years of age (§ 286, subd. (c)(2)(B); count 6), one count of oral copulation of a person under 14 years of age (§ 288a, subd. (c)(1); count 8), one count of forced oral copulation (§ 288a, subd. (c)(2)(B); count 9), one count of assault with intent to commit rape (§ 220, subd. (a)(1); count 20) and one count of continuous sexual abuse (§ 288.5, subd. (a); count 21). As to count 21, the complaint further alleged that defendant inflicted great bodily injury (§ 12022.7, subd. (a)). As to counts 11 through 19, the complaint further alleged that defendant personally inflicted bodily harm on the victim who was under 14 years of age (§ 667.61, subd. (d)(7)).

---

[1]     All further dates refer to the year 2019 unless otherwise stated.

[2]     All further statutory references are to the Penal Code.

On November 26, defendant pled no contest to three counts of forcible rape of a child under 14 years of age (counts 3, 12 & 18) in exchange for a stipulated term of 35 years of imprisonment and dismissal of the other counts of the amended complaint.

On April 27, 2020, defendant moved to withdraw his no contest pleas. Defendant's motion was based on his assertions that he had not received discovery at the time of the plea, and he misunderstood the plea agreement because he did not have a sign language interpreter at the change of plea hearing. In his declaration, defendant stated that he understood the stipulated term to be three to five years in prison rather than 35 years.

The People opposed the motion. In support of the People's motion, they submitted transcripts of recorded calls between defendant and his family members on November 27 relating to defendant understanding that he accepted a term of 35 years' imprisonment and that he might actually serve less time due to time credits.

On June 2, 2020, the trial court took evidence relating to the recorded calls then denied defendant's motion to withdraw his plea.

On June 16, 2020, the trial court imposed the stipulated term.

On June 22, 2020, defendant filed a notice of appeal and requested a certificate of probable cause. The trial court granted the certificate of probable cause on the same date.

## FACTUAL SUMMARY

### The Underlying Offenses

Between June 2016 and February 2017, Defendant repeatedly raped and sexually assaulted 11-year-old Jane Doe. Defendant was a close friend of Doe's mother and Doe believed him to be her father. Doe became pregnant in January or February 2017. On February 8, 2017, Doe told her mother that she believed defendant was the father. On the same date, Doe and her mother reported the abuse to the police.

On February 17, 2017, Doe had an abortion. A sample of the fetal tissue and Doe's DNA were sent to the California Department of Justice for testing. The tests

3.

showed defendant was not Doe's father, however, the fetal tissue positively matched defendant's DNA.

## The Change of Plea Form and Hearing

Defendant signed a change of plea form. That form calculated defendant's stipulated term of imprisonment to include 13 years on count 3, 13 years on count 12, and 9 years on count 18, for a total of 35 years' imprisonment.

At the change of plea hearing, before defendant entered his no contest pleas, the trial court and defendant engaged in the following colloquy:

> "THE COURT: So reviewing the change of plea form just handed to me, [defendant], I understand you'll be entering a plea. Of the 21 charges alleged, you'll be entering a plea to the following three charges, Count Three …[,] Count Twelve …[, and] Count Eighteen … for a total of 35 years at CDC. [¶] … [¶]
>
> "Now, I would have the option, if I find that that information establishes the plea is not appropriate, either it's too great or it's too small—I'd have the option to what's called set aside the plea. But, … if the information provided to the court is consistent with what the attorneys have provided, then I also have the option of accepting the stipulation and sentencing you to the 35 years. Do you understand that?
>
> "DEFENDANT: Yes.
>
> "THE COURT: Have you had enough time to discuss this matter with your attorney, Mr. Roth?
>
> "DEFENDANT: Yes.
>
> "THE COURT: And when you did that, did you read and review and understand and then sign and initial this tan change of plea form?
>
> "DEFENDANT: Yes.
>
> "THE COURT: All right. Sir, I'm going to take you through that form. If you have any questions for me as we go through the change of plea hearing, if you are confused by anything, if you think you need additional time with your attorney or have questions of your attorney or of the court, you just let me know. Okay?

"DEFENDANT: Okay. [¶] … [¶]

"THE COURT: [Defendant], as a result of this plea, to the charges indicated you could receive a maximum sentence of up to 39 years in state prison. [¶] … [A]ll charges are violent strikes. Do you understand all of that?

(Whereupon the defendant speaks to his/her attorney off the record.)

"THE COURT: Do you understand that?

"DEFENDANT: Yeah.

"THE COURT: I notice you paused and spoke to your attorney. I don't know need to know what you spoke about, but I just want to make sure you don't have any further questions of the court?

"DEFENDANT: No. I was just asking about the—just the strike thing. That's all. [¶] … [¶]

"THE COURT: … Sir, besides what we have discussed today, has anyone made any other promises or threats to you to get you to enter into this plea?

"THE DEFENDANT: No."

**The Motion to Withdraw Plea**

In support of his motion to withdraw his pleas, defendant submitted a declaration that read, in relevant part, as follows:

"When I was in court in Nov[ember] 2019[,] I was told that it would be preliminary hearing …. I also told [my attorney] plenty of time[s] I would like a[] sign language interp[re]ter so I could understand what's going on in court. [My attorney] told me it was life I was looking at and it was best for me to sign a deal which I didn't agree to. Without my interp[re]ter I had no understanding what was going on inside court. I also ask[ed] my attorney that I didn't understand what was going on at the time and the judge let us talk it over but I didn't want to take 35 years[.] I thought he said [three to five] years not 35 and my attorney change[d] it to 39 years [and] said it was a[] mistake."

In opposition to defendant's motion to withdraw his plea, the People directed the trial court to the approximately 20 previous hearings at which no request had been made

5.

for the assistance of an interpreter and submitted transcripts of defendant's jail calls with his aunt and his grandfather on November 27. The transcript of the call with his aunt reads in relevant part as follows:

> "[AUNT:] So, uh, so your option was life without parole or these thirty-five years and that mean b[****] wouldn't come down off the, off the, uh, time, [your attorney] said.
>
> "[DEFENDANT:] Yeah, so right now, um, right now, uh, he added eighty-five percent in there. How many years he told you, twenty-nine?
>
> "[AUNT:] He told me twenty-nine.
>
> "[DEFENDANT:] Yeah cuz he added the eight-five percent in there. So … [¶] … [¶] … and like I told [my attorney], you know, what would you do? I made everybody get out of the room before we started and he was like, 'Man, you got two choices. You either thirty-five, or you take life without parole. With no years. She's offering you no years, life without parole.' "

The transcript of the call between defendant and his grandfather reads in relevant part as follows:

> "[DEFENDANT:] I took the deal for thirty-five.
>
> "[GRANDFATHER:] [Yelling] Nooo, man, you didn't take no deal for thirty-five! Why Steven why would you? Steven?
>
> "[DEFENDANT:] Yeah.
>
> "[GRANDFATHER:] Why would you take the deal? Why didn't you wait?
>
> "[DEFENDANT:] It wasn't … it was only two choice she left on the table. You take the thirty-five or you get life without parole. [¶] … [¶] … I need you to call [my attorney]. I need you to call [my attorney] and tell him I want to take that deal off the table. I ain't feel like—
>
> "[GRANDFATHER:] Okay.
>
> "[DEFENDANT:] I got thirty days … he said I got thirty days right?

"[GRANDFATHER:]  That's what he told you?

"[DEFENDANT:]  Yeah, I got thirty days so … I just thought about everything right now … uh-uh.  That, that will, no … I don't want that.  I … rather go through trial.  Cause he said he got enough proof to show that she's a liar, she's conniving and all the sh[**] that she was doing.  He got enough proof to prove that she was lyin'.  The only thing we don't have proof is, is the DNA.  I'm cool with that.  Okay.  But thirty-five, bro? Thirty-five?  Shoot like—

"[GRANDFATHER:]  Yeah … yeah … well you got … yeah you shouldn't take that … okay this is what's gonna happen … they gotta … you gotta go back to court to accept the deal, didn't they tell you that?

"[DEFENDANT:]  That uh … January twenty-eighth I got that sentencing.

"[GRANDFATHER:]  Okay … okay well til then … at that time you tell them you no longer want to take that deal.

"[DEFENDANT:]  No, Pop, I need you to call [my attorney] and tell him … like now.  Like I don't want … I don't want set what I did yesterday.  [¶] … [¶]

"[GRANDFATHER:]  … Why … why …

"[DEFENDANT:]  So he's like well you're only lookin' at—he's like you're only lookin' at twenty-nine years, cause I get eighty five percent and I'm like—"

"[GRANDFATHER:]  Well why they, why they, what about wa[i]ving time?  What about why, why didn't they wa[i]ve time?

"[DEFENDANT:]  I asked Pop.  I did.  I sat in that room for an hour and a half.  Telling [my attorney] … you know let's try ten years … [the prosecutor] didn't go for ten … she didn't go for fifteen.  She didn't even go for thirty.  She was like thirty-five is the minimum.  That's what I'm takin', thirty-five.  If we proceed with this today …

"[GRANDFATHER:]  No.

"[DEFENDANT:]  … it's gonna be life without parole, if we proceed.  Like she was pushing that issue, so we sat there for a hour and a half … trying everything we can.  I talked to him about everything you told me—  [¶] … [¶]

"[GRANDFATHER:] … you know you shouldn'ta took that sh[**]. You shoulda told him man I'm not, I'm not ready to go to j— What did they say about goin' to trial, they talkin' about they gonna give you … they can't automatically give you sh[**]. You gotta go to trial. They gotta have witnesses.

"[DEFENDANT:] I know. I f[***]ed up." [¶] … [¶]

"Well [the trial court] said … well right now what they told me yesterday was, probation gonna come see me, and, probation, uh, gonna ask me a couple of questions and stuff and they're gonna go to the judge, and the judge is goin' to decide if he rather give me less sentence or if … if he gonna accept the thirty-five and stuff. Or if he don't feel like this is not adding up he can give me less sentencing. He can give me less time, but that's up to the judge. But the judge said … he told me in my face, he said, 'I don't know about this case. The DA and your lawyer know more about it then I do but I'm gonna have to go over everything and then I can decide if I want to reject it or accept it.' But that's after … that's after probation come see me."

On February 28, 2020, the trial court and defendant engaged in the following colloquy:

"THE COURT: … I hear mention of an interpreter. [Defendant], what type of interpreter are you asking for?

"DEFENDANT: ASL.

"THE COURT: [Defendant], why do you need a sign language interpreter? You hear everything I'm saying.

"DEFENDANT: I don't understand it.

"THE COURT: Can you hear it?

"DEFENDANT: Somewhat. I miss things sometimes.

"THE COURT: You've never—in the entire history of this case you've never asked for a sign language interpreter.

"DEFENDANT: Yes, I have.

"THE COURT: So you can't hear what I'm saying now.

8.

"DEFENDANT: I can understand some things you are saying right now. I always had one when I was in high school, middle school—I always had an interpreter. So I don't understand what's the problem with me having one now. [¶] … [¶] I need an interpreter in case I miss anything. I need an ASL interpreter. I understand ASL completely.

"THE COURT: I'll have an interpreter present at the next hearing to make sure that's needed."

On June 2, 2020, the trial court held a hearing on defendant's motion to withdraw his pleas. At the end of that hearing, the trial court concluded there was "no good cause or reason to believe that this plea was entered unknowingly, unintentionally, unwillingly, or through any force at all." The court concluded the true reason defendant sought to withdraw his pleas was "buyer's remorse, which is not good cause." For those reasons, the motion to withdraw the pleas was denied.

## DISCUSSION

Defendant argues the trial court erred in denying his motion to withdraw his no contest pleas. Specifically, he contends that the trial court "ignored the evidence of [defendant's] hearing impairment and his constitutional right to an interpreter to aid in his understanding of the serious proceedings the state had lodged against him." We disagree. The absence of a sign language interpreter did not result in defendant being unable to understand the plea such that it was entered by mistake, ignorance, or any other factor overcoming the free exercise of judgment.

Any time before judgment is entered, a trial court may permit a defendant to withdraw his guilty or no contest plea based upon a showing of good cause. (§ 1018.) Section 1018 provides that it "shall be liberally construed" to achieve its "objects and to promote justice." For purposes of section 1018, " ' "[g]ood cause" [to withdraw a plea] means mistake, ignorance, fraud, duress or any other factor that overcomes the exercise of free judgment and must be shown by clear and convincing evidence.' [Citation.] A defendant seeking to withdraw a plea based on the failure to advise on the direct consequences of a conviction must show actual ignorance of those consequences."

9.

(*People v. Dillard* (2017) 8 Cal.App.5th 657, 665.) "[G]ood cause does not include mere ' "buyer's remorse" ' regarding a plea deal …." (*People v. Simmons* (2015) 233 Cal.App.4th 1458, 1466 [collecting cases].)

We review the denial of a motion to withdraw a plea for an abuse of discretion. (*People v. Patterson* (2017) 2 Cal.5th 885, 894.)

Here, the trial court concluded that defendant understood the consequences of his plea prior to entering into the plea. The record supports the trial court's conclusion. Defendant signed the written plea agreement that set out the maximum term of confinement and separately calculated the stipulated term for each count of conviction. Defendant has not attempted to explain how his hearing impairment could have affected his understanding of the written plea agreement. Next, during the change of plea colloquy, defendant was asked if he understood the terms of the plea. Defendant said that he did and stopped to ask his counsel a question regarding the trial court's comment that the offenses constituted violent strikes. The court then again asked defendant if he had any questions and defendant responded that he did not.

Further, during defendant's recorded conversation with his aunt the morning after the plea, defendant explained that prior to the plea his attorney told him that he had two choices—accept a 35-year term or face a term of life without parole. He explained to his aunt that he would only serve 85 percent of the time or 29 years. Similarly, defendant told his grandfather that he sat with his attorney for an hour and a half, requesting a 10-year term, a 15-year term, and a 30-year term, but the prosecutor rejected anything less than 35 years. Defendant then agreed with his grandfather that he made a poor choice in accepting the plea agreement. Finally, defendant explained to his grandfather the stipulated sentence process that the trial court explained to him the preceding day—belying any argument that he did not understand the proceedings.

Based on that record, we cannot conclude that the trial court abused its discretion in concluding that defendant's plea was knowingly and voluntarily entered into with a

10.

full understanding of the likely term of imprisonment, and therefore that no good cause existed for defendant to withdraw his plea.

## **DISPOSITION**

The judgment is affirmed.