Filed 4/3/23  P. v. Gobin CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B315920 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA120917) |
| v. | |
| BRYAN CHRISTOPHER GOBIN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rogelio G. Delgado, Judge.  Affirmed.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

_____

THE COURT.\*

Defendant and appellant Bryan Christopher Gobin appeals from the trial court's order denying his motion to withdraw his plea of no contest to a stalking charge. He requests this court "reverse the lower court's denial of his motion and remand the matter to allow appellant to withdraw his plea."

Penal Code[1] section 1018, the basis of defendant's motion to withdraw his plea, provides in pertinent part: "On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." (§ 1018.)

Defendant correctly argues that a factor overcoming the free exercise of judgment is good cause to withdraw a plea (*People v. Cruz* (1974) 12 Cal.3d 562, 566), but fails to show the trial court abused its discretion in concluding that defendant did not meet that standard. Although there was some evidence that a few days before his plea, defendant's "linear" thinking was diminished, the trial court was not required to credit that testimony and there was conflicting evidence, which the trial court could have credited. The record supports defendant's assertion that he suffered from one or more mental illnesses

---

\* Rothschild, P. J., Bendix, J., Weingart, J.

[1] Undesignated statutory citations are to the Penal Code.

2

(which the mental health court twice found did not render him mentally incompetent), but not his conclusion that his mental illness overcame his free exercise of judgment.

We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2019, the People filed a complaint against defendant. On the same day, the trial court appointed a public defender to represent defendant. On October 10, 2019, the trial court declared a doubt as to defendant's mental competency and suspended proceedings. A defendant is incompetent to stand trial if he or she lacks a " ' " ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—[or lacks] . . . a rational as well as a factual understanding of the proceedings against him." ' [Citations.]" [Citation.]' [Citation.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1032.) On October 25, 2019, the mental health court found defendant mentally competent, and criminal proceedings resumed.

This case involved at least four different judicial officers. The judicial officer who denied defendant's motion to withdraw his plea was not the same one who took the plea. This case also involved at least four defense attorneys.

## 1.    *Information*

On February 4, 2020, the People filed an information alleging one count of criminal threats and one count of stalking. Defendant's now ex-wife was the alleged victim of both counts. That same day, defendant pleaded not guilty to both counts.

3

## 2. *Defendant successfully petitions for mental health diversion*

On February 26, 2020, defendant filed a petition to be placed on mental health diversion pursuant to section 1001.36.[2]

_____

[2] Section 1001.36 provides in pertinent part:

"(b) A defendant is eligible for pretrial diversion pursuant to this section if both of the following criteria are met:  [¶] (1) The defendant has been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia.  Evidence of the defendant's mental disorder shall be provided by the defense and shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert.  In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence.

"(2) The defendant's mental disorder was a significant factor in the commission of the charged offense.  If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.  A court may consider any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the

4

In the context of that motion, defendant described the facts underlying the charges as follows: After defendant's ex-wife requested a divorce, defendant sent her 800 to 1,000 text messages. In one of them, defendant wrote, "If you are thinking of taking legal action, I will put a $100,000 on your head to make your life a miserable hell." In an e-mail to another person, defendant "wrote about working on a bounty killer start-up and burning down" a city.

In the context of requesting mental health diversion, defendant represented that he suffers from a "bipolar 1 disorder," and that his mental health symptoms that motivated his criminal behavior would respond to mental health treatment.

A clinical and forensic psychologist who evaluated defendant reported that defendant texted his ex-wife because she sent a process server, which defendant believed " 'kicked up my PTSD [post traumatic stress disorder] response . . . .' " Defendant "admitted that he was having paranoid thoughts about his ex-wife." Defendant reported having ADHD (attention deficit hyperactivity disorder) but then also reported, " 'I don't really think that I have ADHD. I went to a chiropractor, got an adjustment. I felt awesome. Happy.' " Defendant previously had received mental health treatment and, in 2018, was undergoing treatment for depression and anxiety, and, in 2019, he participated in outpatient therapy. Defendant reported to the psychologist that he was " 'appalled' " by the text messages he had sent to his ex-wife.

---

defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense."

The psychologist concluded defendant suffered from bipolar disorder, with a manic episode. "He had impaired sleep, excessive energy, irritability, agitation, impulsive behavior, and pressured speech. His thoughts raced and were painful and intrusive. He does have an inflated sense of self—not in the sense that he feels better than others, but in that he interprets the actions of other people as being personal attacks and reacts accordingly. He seems to have some symptoms of thought disorder as well, including paranoia and somatic symptoms." "I do not believe that he suffers from PTSD and I am of the opinion that bipolar disorder can account for his difficulties with maintaining concentration."

The trial court granted defendant's request for mental health diversion.

### 3. *The trial court preliminarily revokes mental health diversion and defendant considers a possible plea*

At a February 17, 2021 hearing, the trial court indicated defendant had violated the terms of his diversion multiple times. The court stated, "I think we need to bring him back and see where we're at. I'm not saying I'm not gonna consider mental health diversion as an alternative, but it seems to me that he is— his problems are too great for the relatively loose constrictions of mental health diversion. It may be something that has to happen with a probationary sentence. He has demonstrated he cannot comply with the terms and conditions of mental health diversion."

The court recalled the matter later that day and reported the parties had agreed to a plea deal. Defendant completed a plea form indicating that the court would sentence him to five years of probation if he pleaded no contest to the stalking charge.

Defendant initialed a box on the form indicating that he was not suffering from any medical condition and another box indicating he had no additional questions in connection with the plea. Defendant indicated he was entering the plea "freely and voluntarily." Defendant further checked the box that he was pleading no contest to take advantage of a plea agreement.

The trial court asked defendant, "Do you want to give up your right to a hearing on the issue of whether your mental health diversion should be terminated permanently and criminal proceedings resumed, or do you want to waive that right, accept this disposition, and enter a plea in this case?" Defendant responded, "I understand. . . . My lawyer has been very thorough in explaining to me the offer that was put on the table, which is the same offer that was presented to me in October, 2019 before I spent 438 days in incarceration. I'm quite familiar with the offer because it was presented in October of 2019. So, yes, I'm aware of that."

The court again asked if defendant "want[ed] to have a hearing on . . . whether I should continue your mental health diversion . . . ." Defendant responded, "I understand your question. Yes, Your Honor, I would like to answer it, and the answer, Your Honor, is it would be so detrimental to my physical and mental health to be incarcerated at this moment that you could charge me with murder and I would accept that." The court then stated it could not take a waiver "under these kind of descriptions," indicated that it did not want to leave him in custody and would remand him "on the bail previously indicated," and preliminarily revoked mental health diversion. The court then put the matter over for two days. The court indicated it

7

would proceed only if it were clear defendant's plea was voluntary.

### 4. *Defendant pleads no contest to stalking*

At the outset of the February 19, 2021 hearing, the court stated, "Based upon the totality of my knowledge of the case, and his [defendant's] behavior during the pendency of the case, including his unsuccessful attempt at diversion—if he wants to have a hearing on the issue of diversion, as I told you, I'm disinclined to put him back on diversion. But if he wants a hearing, I'll give him a hearing, and make a decision based on what I hear in the hearing."

The court indicated that if defendant pleaded guilty or no contest to the stalking charge, the court would place him on probation for five years in addition to a 180-day sentence that defendant already served. The court stated, "He'll be released forthwith." The court indicated if defendant violated a term of probation including contacting his ex-wife or her family members, defendant would receive a state prison sentence. Defendant asked his attorney to "talk on that, please."

The court told defendant that defendant could accept the offer or the court would set the case for trial. Defendant responded, "I'll accept it, Your Honor. Thank you." The court instructed defense counsel to speak to defendant. Defendant and his counsel conferred privately.

After conferring with defendant, defense counsel reported that defendant wanted to plead to the stalking charge. The court again inquired whether defendant wanted a hearing on mental health diversion, and counsel answered that defendant did not.

The court called a recess to allow defendant to confer with his attorney. After the recess, defense counsel indicated that

defendant "would like to proceed with the plea, Your Honor." Defendant stated he understood his rights to a hearing on the revocation of his mental health diversion and he gave up those rights.

In the context of a plea colloquy with the court, defendant asserted he understood the charges against him. Defendant asserted he understood everything in the plea form and discussed his rights with his counsel. The court informed defendant that if he were to go to trial and lose, the maximum time defendant could be ordered to serve was three years and eight months. The court further detailed the terms of the sentence defendant would be ordered to serve if he pleaded no contest: five years felony probation, 180 days in custody with credit for time served, and a protective order so that defendant would have no contact with the victim or her family. The court indicated that defendant should have no contact with anyone who he knew would interact with the victim or her family. The trial court indicated that it was willing to agree to probation because it recognized that defendant had significant mental health issues. As part of probation, the trial court required defendant to meet with a therapist once a week and a psychiatrist once a month.

Defendant asked, "What if it's in the newspaper?" Defendant continued, "You know what, Your Honor? Here's the thing. I'm an advocate, and I'm just sorry I can't be an advocate. I can't do this anymore. I really have some problems I need to deal with. I need to fess up and I need to take the time to do that. So I accept that. It's very humbling to have to admit to you I have serious issues I need to deal with. It's not easy to be a 47-year-old man who lost his job at a Fortune 500 company two

and a half years ago because of health issues. I accept these terms."

Defendant stated he was "pleading guilty or no contest" because he believed it was in his "best interests to do so." Defendant pleaded no contest to felony stalking. Defense counsel stipulated to a factual basis based on the pre-plea report and the preliminary hearing. The court accepted defendant's plea, finding that defendant made it "freely, voluntarily entered with full knowledge of the consequences" and found a factual basis "based upon the stipulation of counsel . . . ." The court suspended imposition of the sentence and placed defendant on formal probation for five years.

The People dismissed the criminal threats charge "[p]ursuant to the plea remaining in full force and effect."

After taking the plea the court indicated, "Mr. Gobin, I wish you the best. I really do. You seem to be extremely intelligent. . . . As your lawyer has probably told you, if you do a good job on probation and don't violate, you can get this charge reduced to a misdemeanor and expunged from your record so you don't have a felony conviction." Defendant responded, "Your Honor, I thank you for that mercy."

**5.      *The People move to revoke defendant's probation***

In June 2021, the People filed a motion seeking revocation of defendant's probation on the ground that defendant violated the terms of his probation by committing new crimes. The probation revocation request was filed in lieu of a new prosecution.

The court preliminarily revoked defendant's probation. The court set the case for a probation violation hearing.

10

## 6.    *Defendant moves to withdraw his no contest plea*

On July 20, 2021, defendant filed a motion to withdraw his guilty plea. Defendant argued that "his plea on February 19, 2021 was a result of poor mental health care which included inappropriate medication management and denial of necessary services." Defendant requested to withdraw his plea "[a]s a result of his well documented mental health issues which prevented him from providing knowing, intelligent voluntary waiver and plea in this matter."

At a hearing two days after defendant filed his motion to withdraw his plea, defendant stated, "I regret deeply . . . pleading guilty the first time and made that known to my attorney pretty much the next day, but now I'm here . . . ." Defendant expressed concern that while incarcerated, he could not receive treatment for "A.D.H.D. which affects my ability to concentrate. It affects my attention."

On August 18, 2021, the trial court held a hearing on defendant's motion to withdraw his plea.[3] At the outset, counsel for defendant asserted that the motion was pursuant to section 1018.

Dr. Amanda Seon-Walker testified in support of defendant at that hearing and the People stipulated that she was an expert psychologist. Seon-Walker has treated defendant since October 2020. Seon-Walker testified, "Mr. Gobin has a lot of trauma. Mr. Gobin has a lot of anxiety as a result of that

---

[3] For purposes of this appeal, we assume without deciding that a defendant may challenge a plea, which resulted in a probationary sentence after the defendant violated probation and the parties do not contend otherwise.

trauma, and whenever he's triggered, he tends to have that trauma come out in very anxious ways; so he does things impulsively as a result of his trauma." Seon-Walker further testified that defendant suffers from attention deficit and posttraumatic stress disorders. She opined that the posttraumatic stress disorder "leads to hypervigilance" and the attention deficit disorder leads to impulsivity. Also according to Seon-Walker, defendant's trauma occurred 27 years earlier when defendant was hospitalized and developed a fear of "being unlawfully hospitalized."

Seon-Walker also testified about her virtual session with defendant on February 16, 2021, the day before defendant signed the plea form. When she spoke to defendant on February 16, 2021, Seon-Walker described his state as dysphoric, meaning that "[h]e was very down, lots of feelings of hopelessness, lots of feelings of sadness." According to Seon-Walker, any time defendant "was to come to court, he became increasingly anxious and increasingly distressed; and so he generally had a lot of anxiety and a lot of difficulty with making appropriate decisions prior to court." Seon-Walker opined defendant "was impacted to the degree that he was unable to make a rational decision" on February 16, 2021. Defendant was frustrated that his case was not "work[ing] in his favor." Seon-Walker also testified that on February 16, defendant was "oriented to person, place, time, situation. He knew where he was. He knew what was going on. . . . He was more kind of linear in his thinking at that point in time."

On February 23, 2021—four days after defendant pleaded guilty to the stalking charge—Seon-Walker observed that defendant "was disorganized." Defendant showed "difficulty

12

sustaining attention . . . feeling restless" and reported
" 'struggling with the symptoms that are causing him difficulty in
his occupation, personal, and community arena[.]' " Defendant
felt "humiliated and powerless." Defendant reported to Seon-
Walker that he "wants to be able to see the beauty of the world
and realizes that he does not have clear judgment." Between
February 16 and February 23, defendant "had some difficulty
understanding issues," which Seon-Walker attributed to the fact
defendant was not taking a medication that "assists with . . . the
linear thinking piece." On February 23, 2021, Seon-Walker
believed defendant "had an understanding of the consequences of
his actions."

On cross-examination, Dr. Seon-Walker testified she
thought all defendants suffer anxiety prior to court appearances.
Dr. Seon-Walker stated that on February 16, 2021, defendant
was "oriented and alert" and knew he was going to court the
following day. According to Seon-Walker, on February 16th,
defendant was able to respond to questions in a linear fashion.
On February 23, 2021, defendant told Seon-Walker what
happened in court. Defendant understood that he could have his
case reduced to a misdemeanor and was able to reflect about
what happened in court.

Defendant also testified at the hearing on his motion to
withdraw his plea. He stated that at that time (the time of the
hearing on his motion to withdraw his plea), his mental health
issues were "pretty bad" because he had not had treatment for
over two months in custody. At the time of the hearing on his
motion to withdraw his plea, defendant had a "dreadful fog that's
distorting my mind's eye, kind of clouding my perception of
reality and thus impairing my judgment and ability to ingest and

13

process data. I am a little bit more prone to be emotionally overwhelmed when I [am] rushed. I am suffering from losses and short-term memory. My attention is not as good as it normally is. My concentration is impaired. I don't have a lot of tolerance for stress, and my emotional well-being is not particularly good given that I have a serious amount of pain due to two car accidents, and I am receiving no medication for pain while I am in custody. And for two or three days out of the week, I'm experiencing disturbing levels of anxiety and depression, and sometimes I'm just a bit impulsive." Defendant testified that he was "emotionally distraught," "short tempered," "incredibly irritable," and "anxious."

Defendant also testified that from February 17, 2021 to February 19, 2021 (the dates between signing the plea form and accepting the plea), he received no medication and was unable to sleep. Defendant testified that he was in county jail for those two days. Defendant said that he completed the plea form to "end this torture." According to defendant, he had "no ability to reason through in a rational manner what is going to happen if I, you know, give away all of my rights, which, you know, I didn't realize what I did until I actually started getting proper medication a few weeks later when I got a real psychiatrist . . . ."

The trial court denied defendant's motion to withdraw the plea. The court found no evidence that defendant was "so out of sorts or unable to understand the proceedings . . . ." "He had apparently an offer on the 17th. They gave him two days to think about it. He comes back and he takes it."

14

**7.** *After defendant is found mentally competent, he admits to violating the terms of his probation*

At an August 26, 2021, after the court denied his motion to withdraw his plea, the court held a hearing on the alleged probation violation. Based on defendant's behavior during the proceedings, the trial court suspended the hearing and set the matter for a mental competency hearing. The mental health court found defendant competent to stand trial. On October 8, 2021, defendant admitted to violating his probation. The trial court imposed the low term of 16 months for the stalking charge.[4]

## DISCUSSION

Relying on defendant's "mental illness brought on in part by his not having access to needed medications that treated his ADD," defendant argues that the trial court erred in denying his motion to withdraw his plea. We conclude the trial court acted within its discretion in denying defendant's motion.

" 'Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial.' [Citation.] These include the privilege against self-incrimination, the right to trial by jury, and the right to confrontation." (*People v. Farwell* (2018) 5 Cal.5th 295, 299.) When a defendant pleads guilty, "the record must demonstrate that the defendant voluntarily and intelligently waived his constitutional trial rights." (*Id*. at p. 300.)

---

[4] Defendant did not timely appeal from the order denying his motion to withdraw his plea and did not obtain a certificate of probable cause. This court granted him relief, and the trial court ultimately issued a certificate of probable cause.

15

"A court may permit a guilty or no contest plea to be withdrawn 'for good cause shown,' " and the showing must be made by clear and convincing evidence. (*People v. Dillard* (2017) 8 Cal.App.5th 657, 665 (*Dillard*).) " 'Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea' " under section 1018, the statute on which defendant based his motion to withdraw his plea. (*People v. Patterson* (2017) 2 Cal.5th 885, 894.) "A plea may not be withdrawn simply because a defendant has changed his or her mind." (*Dillard*, at p. 665.)

We review the denial of a motion to withdraw a plea for abuse of discretion and defer to the trial court's credibility determinations. (*Dillard*, *supra*, 8 Cal.App.5th at p. 665.) "The discretion exercised by a court ' "is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." [Citation.] An exercise of discretion is subject to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' [Citation.]" (*People v. Perez* (2015) 233 Cal.App.4th 736, 742.) ' " ' "[W]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' [Citations.]" (*In re Caden C.* (2021) 11 Cal.5th 614, 641.)

Turning to this case, defendant demonstrates no abuse of discretion. First, no witness testified that defendant's mental illness overcame exercise of his free judgment. Seon-Walker did testify that defendant "was unable to make a rational decision"

16

on February 16, 2021, the day before defendant signed the plea form and three days before his plea.  She did not meet with him on the day he entered his plea.  She also testified that because on February 16, 2021, defendant was not taking medication, he had "some difficulty understanding issues . . . ."

Seon-Walker, however, contradicted her own testimony when she testified that on February 16, 2021, defendant "was able to respond . . . in a linear fashion."  Further on February 23, 2021, when Seon-Walker met with defendant, he "was able to reflect about what happened in court . . . ."  The trial court could have credited Seon-Walker's testimony that defendant was able to think linearly and to reflect on the court proceedings when it concluded defendant failed to show by clear and convincing evidence good cause to withdraw his plea.

Second, the trial court did not have to credit defendant's testimony.  (*People v. Boyles* (1961) 191 Cal.App.2d 78, 82.)  Defendant testified that he was rushed, lacked sleep, and was unable to reason through the consequences of giving up his rights because he did not receive proper medical treatment for "the previous months."

There was other evidence that defendant had sufficient time to consider the consequences of his plea and exercise his judgment in choosing to plead no contest, and the court was entitled to have credited that evidence.  Defendant signed the plea form on February 17, 2021, expressly indicating that he was "not suffering from any medical condition" preventing him from understanding the consequences of his plea.  After signing the form, defendant had an additional two days to consider the consequences of his plea with the assistance of counsel.  (*People v. Morelos* (2022) 13 Cal.5th 722, 757 [extended period of time to

17

consider jury waiver relevant in assessing voluntariness].) Defendant also reported that he was familiar with the offer because the People had proposed it in October 2019 and his attorney thoroughly explained the offer to him.

The following evidence from the plea colloquy further supports the conclusion that defendant understood the plea and was able to exercise his judgment. Defendant indicated that he discussed with his attorney the charges, potential defenses, and possible penalties were he to lose at trial. Defendant also indicated that he understood the charges against him. Defendant told the court that he understood his right to a trial, to confront and cross-examine witness, call defense witnesses, present defense evidence, issue subpoenas, as well as his right not to incriminate himself. Defendant reported that he read the plea form and understood everything in it. Defendant reported he discussed it with his attorney and initialed and signed the form. When the court asked if defendant had any additional questions about the form, defendant responded, "No." Defendant volunteered that he had "some problems I need to deal with" and was accepting the terms of the plea. Defendant reported he was pleading no contest because he believed it was in his best interest to do so.

On appeal, defendant emphasizes that at the time he pleaded no contest to the stalking charge, "[h]e just wanted to get things over with . . . ."[5] The fact that it was in defendant's interest to accept a plea with a suspended sentence and "get

_____

[5] An administrator from Seon-Walker's office observed the court proceedings on February 19, 2021 and reported to Seon-Walker that defendant expressed the desire "to get out [of jail] that day."

18

things over with" does not show that the trial court abused its discretion in concluding defendant's mental illness did not overcome his exercise of free judgment.

Finally, defendant's reliance on *People v. McGarvy* (1943) 61 Cal.App.2d 557 is misplaced. In *McGarvy*, the appellate court reversed an order denying a defendant's request to withdraw a plea of guilty to manslaughter. *McGarvy* is distinguishable because, in contrast to this case, the defendant in *McGarvy*, among other things, did not have sufficient time within which to discuss his case with his attorney and did not understand the nature of the proceedings. (*Id*. at p. 559.) Here, the proceedings were not hurried; defendant also had time to consider and understand his plea and to consult with his attorney.

## DISPOSITION

The order denying defendant's motion to withdraw his guilty plea is affirmed.

NOT TO BE PUBLISHED.

19