Filed 8/9/17

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| HOMER LARON HARRIS, | C083669 |
| Petitioner, | |
| v. | (Super. Ct. No. STKCRMDV20160004541) |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate. Stay issued. Petition granted. George J. Abdallah, Jr., Judge.

Miriam T. Lyle, Public Defender, Nelson C. Lu, Deputy Public Defender, for Petitioner.

No appearance for Respondent Superior Court.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General for Real Party in Interest.

---

[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

1

This is a petition for writ of mandate by petitioner Homer Laron Harris after the Appellate Division of the Superior Court of San Joaquin County (Appellate Division) summarily denied the appointment of counsel to represent him in his appeal of a restitution order in connection with a misdemeanor conviction.  We conclude that appellate counsel should be appointed to represent petitioner on appeal.  Accordingly, we shall issue a writ of mandate directing the Appellate Division to vacate its order denying petitioner's request for appointed counsel and enter a new order granting that request.  In doing so, we conclude that an order requiring the payment of restitution is a "significant adverse collateral consequence" within the meaning of California Rules of Court, rule 8.851(a)(1)(A),[1] requiring the appointment of counsel for an indigent defendant on appeal in a misdemeanor case.

## FACTUAL AND PROCEDURAL HISTORY

### Superior Court Proceedings

On April 6, 2016, the district attorney filed an amended complaint charging petitioner with misdemeanor corporal injury to a spouse/cohabitant/parent of child (Pen. Code, § 273.5, subd. (a); count 1);[2] misdemeanor vandalism (§ 594, subd. (a)(1); counts 2 & 4); and misdemeanor dissuading a witness (§ 136.1, subd. (b)(1); count 3).  Petitioner subsequently pleaded no contest to count 1, and the remaining charges were dismissed in the interest of justice in light of the plea.  Imposition of sentence was suspended, and petitioner was granted three years of formal probation and ordered to serve 45 days in county jail as a condition of probation and to pay various fines and fees, totaling $735.  No restitution to the victim was ordered at that time.  On October 31, 2016, the trial court

---

[1]  Undesignated rule references are to the California Rules of Court.

[2]  Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

modified petitioner's probation following a restitution hearing and ordered him to serve his original 45-day jail sentence and pay restitution in the amount of $1,571.32.

On November 21, 2016, petitioner, through appointed counsel who represented defendant at the restitution hearing, filed a notice of appeal of the trial court's restitution order and requested the appointment of counsel to represent him on appeal. The form created by the Judicial Council to request counsel, and used here, instructs defendants in item 3 to "[d]escribe the punishment the court gave you/your client in this case *(check all that apply and fill in any required information)*." Only the box labeled "Restitution" was checked and $1,571.32 was filled in on the line provided for the amount of restitution ordered. The form further instructs in item 4: "*Describe any significant harm that you are/your client is likely to suffer because of this conviction*." In response, the form submitted on defendant's behalf stated: "[Petitioner] faces serious financial harm as a result of the restitution judgment rendered in this case. The amount of restitution ordered is exponential; and the statutory standard, used to determine the restitution amount, was not upheld. Accordingly, such a judgment not only jeopardizes [petitioner's] financial well-being, but could later affect his credit should any sort of civil judgment be imposed."

The Appellate Division summarily denied petitioner's request for appointed counsel.

### Writ Proceedings

Petitioner filed in this court the instant petition for writ of mandate and request for a stay, arguing that he had a right to appeal the restitution order because he was likely to suffer "significant adverse collateral consequences" from the order and therefore had a right to the appointment of counsel under California Rules of Court, rule 8.851.[3] This

---

[3] Rule 8.851 provides as follows: (a) Standards for appointment [¶] (1) On application, the appellate division *must appoint* appellate counsel for a defendant convicted of a

3

court issued a temporary stay, pending filing of opposition and further order. Thereafter, this court received preliminary informal opposition from the Attorney General on behalf of real party in interest the People of the State of California, contending that the request for appointed counsel was properly denied because the restitution order was not a "significant adverse collateral consequence" of petitioner's conviction but rather, a "direct consequence" of his guilty plea and thus was not a matter for which rule 8.851 required appointment of counsel. In his reply to the preliminary opposition, petitioner maintained his position that the restitution order was a significant collateral consequence requiring the Appellate Division to appoint appellate counsel pursuant to rule 8.851. Additionally, for the first time, petitioner argued in the alternative, that regardless of the restitution order, petitioner was nevertheless entitled to the appointment of counsel under rule 8.851(a)(1)(A), because his punishment included 45 days in county jail as well as fines totaling more than $500. That same day, this court issued an order to show cause why the relief prayed for in the proceeding should not be granted.

In the People's return to order to show cause, the Attorney General conceded that pursuant to rule 8.851(a)(1)(A), "[d]espite the fact that petitioner's request for counsel failed to properly describe all of the punishment imposed in his case, the appointment of counsel is required because his sentence included jail time and fines totaling $735." Accordingly, the Attorney General conceded the petition for writ of mandate should be granted. Petitioner filed a traverse to the Attorney General's return, accepting the People's concession but maintaining he was also entitled to relief under the "original

misdemeanor who: [¶] (A) Is subject to incarceration or a fine of more than $500 (including penalty and other assessments), or who is likely to suffer *significant adverse collateral consequences* as a result of the conviction; and [¶] (B) Was represented by appointed counsel in the trial court or establishes indigency. [¶] (2) On application, the appellate division may appoint counsel for any other indigent defendant convicted of a misdemeanor. [¶] (3) A defendant is subject to incarceration or a fine if the incarceration or fine is in a sentence, is a condition of probation, or may be ordered if the defendant violates probation." (Boldface omitted & italics added.)

4

theory argued – that the restitution amount ordered was a collateral consequence that rendered substantial harm." We address that issue to clarify that an order requiring the payment of restitution in the amount ordered here is a "significant adverse collateral consequence" within the meaning of rule 8.851.

## DISCUSSION

### I. Significant Adverse Collateral Consequences

Rule 8.851 sets forth the standards for appointment of counsel in misdemeanor appeals. The Appellate Division "must" appoint counsel for a misdemeanor appellant who "is likely to suffer *significant adverse collateral consequences* as a result of the conviction[] and [¶] [w]as represented by appointed counsel in the trial court or establishes indigency." (Rule 8.851(a)(1) & (a)(1)(A), italics added; see fn. 3, *ante*.)

The phrase, "significant adverse collateral consequences" is not defined in the rule or elsewhere in the Rules of Court. Further, there is no published case law interpreting this phrase in the rule. We do so here.

In interpreting the language of the rule, we apply traditional rules of statutory interpretation. (*Rossa v. D.L. Falk Construction, Inc.* (2012) 53 Cal.4th 387, 391 [Rules of Court are interpreted according to the same principles governing interpretation of statutes], superseded by rule in *Siry Investments, L.P. v. Farkhondehpour* (2015) 238 Cal.App.4th 725, 729.) It is well-settled that the primary goal when interpreting a statute or rule is to determine the drafters' intent in order to give effect to the rule's purpose. (*Rossa*, at p. 391.) " 'The court begins with the language used. [Citation.] The court attempts to give effect to the usual, ordinary import of the language and to avoid making any language mere surplusage. [Citations.] "The words must be construed in context in light of the nature and obvious purpose of the statute where they appear. . . ." [Citation.] The statute "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or

5

absurdity." ' " (*In re Rosalio S.* (1995) 35 Cal.App.4th 775, 778.)  Thus, it has long been a settled principle of statutory interpretation in our state that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.  (See *People v. Leiva* (2013) 56 Cal.4th 498, 506, 508, 510; *People v. Pieters* (1991) 52 Cal.3d 894, 898; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 113.)  " 'Experience teaches . . . that unforeseen ambiguities can and do come to light despite the drafters' considered efforts to avoid them.  In such cases, courts may consult appropriate extrinsic sources to clarify the drafters' intent.' " (*Rossa*, at pp. 391-392.)

It is not clear what the Judicial Council meant by using the word "collateral" to describe the adverse consequences that trigger a right to the appointment of appellate counsel.  "A dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute." (*E. W. Bliss Co. v. Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn. 2.)  As pertinent here, the American Heritage Dictionary defines the adjective "collateral" as follows:  "1. Situated or running side by side; parallel.  2. Coinciding in tendency or effect; concomitant or accompanying. . . .  4. Of a secondary nature; subordinate." (American Heritage Dict. (5th ed. 2016) p. 362.)

The Attorney General points out that "collateral consequences" is a term used in the context of plea advisement requirements and argues that the same definition must be applied in rule 8.851(a)(1)(A).  As we shall explain, this conflation is untenable and would result in absurd consequences we conclude could not have been intended by the Judicial Council.

In addition to advising a criminal defendant of his or her constitutional rights, California trial courts must also advise defendants of the "direct" consequences of a guilty or no contest plea.  (*People v. Gurule* (2002) 28 Cal.4th 557, 634 (*Gurule*); *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 (*Bunnell*); *People v. Dillard* (2017) 8 Cal.App.5th 657, 664 (*Dillard*).)  "The advice requirement generally extends only to

'penal' consequences [citations], which are 'involved in the criminal case itself.' "
(*People v. Moore* (1998) 69 Cal.App.4th 626, 630 (*Moore*).)  A consequence is direct in
this context "if it has ' " 'a definite, immediate and largely automatic effect on the range
of the defendant's punishment.' " ' " (*Ibid.*, accord, *Dillard*, at p. 664.)  Victim
restitution is a direct consequence of the plea.  (*People v. Walker* (1991) 54 Cal.3d 1013,
1022, disapproved as stated in *People v. Villalobos* (2012) 54 Cal.4th 177, 181-183
(*Villalobos*); *People v. Valdez* (1994) 24 Cal.App.4th 1194, 1203-1204.)[4]  In fact,
restitution is constitutionally mandated in all cases in which a victim suffers a loss as a
result of the defendant's criminal act.  (*People v. Broussard* (1993) 5 Cal.4th 1067, 1068-
1069, citing Cal. Const., art. I, former § 28, subd. (b), as enacted June 8, 1982, by voters
in adopting Prop. 8, the Victims' Bill of Rights; *People v. Martinez* (2017) 2 Cal.5th
1093, 1100-1101, citing Cal. Const., art. I, former § 28, subd. (b)(13), as revised and
enacted Nov. 5, 2008, by voters in adopting Prop. 9, the Victims' Bill of Rights of 2008:
Marsy's Law.)

While an advisement is required for a direct consequence, no advisement is
required for "collateral" consequences.  (*Gurule, supra*, 28 Cal.4th at p. 634.)  A
"collateral" or "indirect" consequence is one that "does not 'inexorably follow' from a

---

[4] The following is a non-exclusive list of other *direct* consequences for which an
advisement must be given under California's judicially declared rule of criminal
procedure:  the potential maximum sentence, including fines (*Bunnell*, *supra*, 13 Cal.3d
at p. 605); minimum and maximum restitution fine (*Villalobos, supra*, 54 Cal.4th at
p. 186); probation ineligibility (*People v. Caban* (1983) 148 Cal.App.3d 706, 711);
registration requirements (*People v. McClellan* (1993) 6 Cal.4th 367, 376; *People v. Zaidi*
(2007) 147 Cal.App.4th 1470, 1485 [same]); maximum period of parole (*In re Moser*
(1993) 6 Cal.4th 342, 352); mandatory revocation of driving privileges (*Corley v.
Department of Motor Vehicles* (1990) 222 Cal.App.3d 72, 76).  There are also statutory
requirements that require advisements for consequences that could otherwise be
considered collateral, e.g.:  potential effect on immigration status (§ 1016.5; *Moore,
supra*, 69 Cal.App.4th at p. 633); a no contest plea in a misdemeanor case may not be
used against the defendant in a civil case.  (§ 1016, subd. (3).)

conviction of the offense involved in the plea." (*People v. Crosby* (1992) 3 Cal.App.4th 1352, 1355.) The use of the adjective "collateral" in the context of plea advisements is consistent with the common, ordinary dictionary definition of the word.[5] The rule requiring advisement of direct consequences and not collateral consequences is a judicially declared rule of state criminal procedure. (*Gurule*, at p. 634; *Barella, supra*, 20 Cal.4th at p. 266; *Bunnell, supra*, 13 Cal.3d at p. 605.)

Since victim restitution is a direct consequence, not a collateral consequence in the plea advisement context, the Attorney General argues petitioner is not entitled to the appointment of counsel to challenge a restitution order on appeal. As noted, a consequence is direct if it "has ' " 'a definite, immediate and largely automatic effect on the range of the defendant's punishment.' " ' " (*Moore, supra*, 69 Cal.App.4th at p. 630.) Such consequences involve " 'penal' consequences [citations], which are 'involved in the criminal case itself.' " (*Ibid*.) In our view, whether petitioner is entitled to the appointment of counsel under rule 8.851, cannot reasonably be limited to collateral consequences as defined in the plea advisement case law and exclude consequences

---

[5] The following is a non-exclusive list of *collateral* consequences for which no advisement need be given prior to defendant entering a guilty or no contest plea: the conviction resulting from the plea may be used to enhance a sentence for a future conviction (*Gurule, supra*, 28 Cal.4th at pp. 634-635 [plea to murder could be used to support prior murder special circumstance in a future murder prosecution]; *People v. Bernal* (1994) 22 Cal.App.4th 1455, 1457 [plea to a serious felony or felony that qualifies for a prior prison term enhancement]); requirement that defendant participate in a sex offender management program as a condition of probation pursuant to section 1203.067, subdivision (b) (*Dillard, supra*, 8 Cal.App.5th at pp. 666-667); possibility that a guilty plea might result in a revocation of probation and a prison sentence (*People v. Martinez* (1975) 46 Cal.App.3d 736, 745; *People v. Searcie* (1974) 37 Cal.App.3d 204, 211); that fewer conduct and work credits are available when a defendant pleads to a strike offense (*People v. Barella* (1999) 20 Cal.4th 261, 262 (*Barella*)); that conviction related to certain sex crimes could result in a finding that the defendant is a sexually violent predator (*Moore, supra*, 69 Cal.App.4th at pp. 630-633).

deemed direct because they involve penal consequences involved in the case and have an effect on the range of a defendant's punishment. Such a result would be absurd.

We note there is no indication that the Judicial Council intended to import the "collateral consequences" doctrine from the plea advisement case law when drafting rule 8.851. Our only available direct insight into the Judicial Council's intent is an advisory committee report recommending the adoption of the rule, which does not address the meaning of the phrase either. (Judicial Council of Cal., Advisory Com. Rep., Appellate Procedure: Rules and Forms for the Superior Court Appellate Divisions, Feb. 6, 2008, pp. 41-42, at <http://www.courts.ca.gov/documents/022208item7.pdf> [as of August 9, 2017] (Advisory Committee Report).)[6]

While the Attorney General urges us to apply the dichotomy of "direct" and "collateral consequences" from the plea advisement cases to prevent appointment of counsel under rule 8.851, we look to how the term "collateral consequences" has been used in the context of appeals and conclude the meaning of "collateral consequences" more likely intended by the Judicial Council is illustrated in mootness cases involving criminal appeals. For example, in *People v. Valencia* (2014) 226 Cal.App.4th 326, 329 (*Valencia*), the court held that under the circumstances of the case, "no prejudicial *collateral consequences* would be ameliorated" by an appeal awarding defendant three additional days of presentence custody credit; therefore, the appeal was deemed moot even though the defendant had been entitled to the three days of credit. In *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368-1369, the court stated: "A criminal case

---

[6] The report did note a public comment recommending that the committee add a definition for "significant adverse collateral consequences." (Advisory Committee Report, at pp. 375-376.) The committee did not indicate an intent to employ the definition of collateral consequences relevant to plea advisement in response to that comment. Rather, the committee response was that it would consider this recommendation during the next committee year. (*Id.* at p. 374.) We can find no indication in subsequent reports related to rule 8.851 that this ever occurred.

should not be considered moot where a defendant has completed a sentence where, as here, the sentence may have 'disadvantageous *collateral consequences*.' " (Italics added.) In *Ellison*, the defendant had been sentenced to prison after a probation violation by a judge who did not have authority to do so under *People v. Arbuckle* (1978) 22 Cal.3d 749. (*Ellison*, at pp. 1366-1367.) The *Ellison* court rejected the People's contention that the appeal was moot simply because the defendant had been released on parole during the pendency of the appeal, noting that the parole period could potentially extend beyond the original period of probation, defendant could be sent back to prison if he violated parole and the conviction could be used as a future prior prison commitment enhancement under section 667.5, subdivision (b). (*Ellison*, at p. 1369.) The court concluded that in light of these "adverse collateral consequences," the appeal could not be considered moot. (*Ibid.*) In *People v. DeLong* (2002) 101 Cal.App.4th 482, the court concluded that the defendant's appeal from a conviction after jury trial was not rendered moot when her conviction was set aside after successfully completing a Proposition 36 drug treatment program, in part because she continued "to suffer disadvantageous and prejudicial *collateral consequences* therefrom." (*DeLong*, at p. 492.) The court observed that under section 1210.1, subdivision (d)(2), the conviction prohibited the defendant from legally possessing a firearm and she was still required to report the conviction under certain circumstances when asked under section 1210.1, subdivision (d)(3).[7] (*DeLong*, at p. 492.)

---

[7] In pertinent part, former section 1210.1, subdivision (d), in effect at the time provided as follows: "(d) Dismissal of charges upon successful completion of drug treatment [¶] (1) At any time after completion of drug treatment, a defendant may petition the sentencing court for dismissal of the charges. If the court finds that the defendant successfully completed drug treatment, and substantially complied with the conditions of probation, the conviction on which the probation was based shall be set aside and the court shall dismiss the indictment, complaint, or information against the defendant. In addition, except as provided in paragraphs (2) and (3), both the arrest and the conviction shall be deemed never to have occurred. Except as provided in paragraph (2) or (3), the

As was the case with the use of the word "collateral" in the plea advisement context, the meaning of "collateral" as applied in the context of these mootness cases discussing collateral consequences is consistent with the ordinary dictionary meaning of the word. However, in our view, for the reasons we have stated, it is highly unlikely the Judicial Council meant to import the meaning of collateral consequences from the plea advisement context to a rule involving appeals. Instead, it seems likely that the meaning of collateral consequences as used relative to the justiciability of appeals is the meaning the Judicial Council intended in creating a standard by which to determine whether counsel should be appointed to represent indigent criminal defendants on appeal in the Appellate Division. This is so because there would be no point to appointing counsel when there are no prejudicial consequences that could be ameliorated by the appeal. (See *Valencia, supra*, 226 Cal.App.4th at p. 329 [holding that appeal was moot because "no prejudicial collateral consequences would be ameliorated" by the appeal].) Here,

---

defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted. [¶] (2) Dismissal of an indictment, complaint, or information pursuant to paragraph (1) *does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person* or prevent his or her conviction under Section 12021. [¶] (3) Except as provided below, after an indictment, complaint, or information is dismissed pursuant to paragraph (1), the defendant may indicate in response to any question concerning his or her prior criminal record that he or she was not arrested or convicted for the offense. Except as provided below, a record pertaining to an arrest or conviction resulting in successful completion of a drug treatment program under this section may not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate. [¶] Regardless of his or her successful completion of drug treatment, the arrest and conviction on which the probation was based may be recorded by the Department of Justice and disclosed in response to any peace officer application request or any law enforcement inquiry. *Dismissal of an information, complaint, or indictment under this section does not relieve a defendant of the obligation to disclose the arrest and conviction in response to any direct question contained in any questionnaire or application for public office, for a position as a peace officer as defined in Section 830, for licensure by any state or local agency, for contracting with the California State Lottery, or for purposes of serving on a jury*." (Italics added.)

11

restitution must be seen as a prejudicial consequence that could be ameliorated on appeal should defendant prevail, and the common dictionary meaning of "collateral" easily applies to the consequence of having to make restitution.

While, as we have noted, we have no direct insight into the Judicial Council's intended meaning, our construction of the rule is consistent with the Judicial Council form used to request counsel. Form CR-133 (rev. Mar. 1, 2014), in plain English states in the "Instructions" section: "The court is required to appoint a lawyer to represent you on appeal only if you cannot afford to hire a lawyer and [¶] (1) your punishment includes going to jail or paying a fine of more than $500 (including penalty and other assessments), or [¶] (2) you are likely to suffer *other significant harm* as a result of being convicted." Item 4 of the form calls for a description of "*any significant harm*" the defendant is likely to suffer as a result of the conviction. The use of the phrases "other significant harm" and "any significant harm" demonstrates a broader meaning of the term "collateral consequences" than advocated by the Attorney General and would seem to include restitution orders. This view is further confirmed by item 3 on the form calling for a description of the punishment the trial court gave the defendant. That section includes boxes not only for "Restitution," but also "Probation," another consequence that would be considered a direct consequence under the plea advisement body of law.

We note that there are additional consequences that result from a restitution order which could be ameliorated by an appeal, and these consequences must be considered "collateral" even under the Attorney General's conception of that term. An order to pay restitution is deemed a money judgment and enforceable as if it were a civil judgment. (§§ 1202.4, subd. (i), 1214, subd. (b).) Restitution orders from misdemeanor cases are enforceable in the same manner as a money judgment in a limited civil case. (§ 1214, subd. (c); Code Civ. Proc. § 582.5.) Section 1214, subdivision (b), gives victims "access to all resources available under the law to enforce the restitution order," including: access to the defendant's financial records, information regarding the defendant's assets

12

and wage garnishment, and lien procedures.[8]  Any unpaid balance of restitution survives the probationary term and thus the termination of probation does not terminate a restitution order.  (§ 1214; *People v. Seymour* (2015) 239 Cal.App.4th 1418, 1435.)  The remaining balance may still be enforced as a civil judgment.  (§ 1203, subd. (j); *People v. Freidt* (2013) 222 Cal.App.4th 16, 22; *People v. Guillen* (2013) 218 Cal.App.4th 975, 985.)  Additionally, as petitioner argues, the restitution order would have adverse consequences on his financial well-being and his credit.  Finally, since the payment of restitution was a condition of probation, the failure to pay could result in a violation of probation.  These adverse collateral consequences could be ameliorated by the appeal challenging the restitution order.

Our analysis does not end with the definition of "collateral consequences."  Rule 8.851(a)(1)(A) requires that the adverse consequences a defendant is likely to suffer be "significant."  As pertinent here, "significant" is defined as:  "2. Having or likely to have a major effect; important . . .  3. Fairly large in amount or quantity."  (American Heritage Dict. (5th ed. 2016) p. 1630.)  The amount of restitution ordered here was $1,571.32.  We have no trouble deeming that amount "significant" within the meaning of the rule because it is over three times as much as the statutory threshold for fines of $500.  (Rule 8.851(a)(1)(A).)  Restitution is similar to (but not the same as) a fine in this context, serving rehabilitative and deterrent purposes, in addition to compensating the victim.  (*People v. Hume* (2011) 196 Cal.App.4th 990, 995; *People v. Harvest* (2000) 84 Cal.App.4th 641, 650 [noting the deterrence function of restitution, but also noting restitution is not a criminal penalty]; *People v. Moser* (1996) 50 Cal.App.4th 130, 135-136 [noting that the direct relation between the harm and restitution gives restitution a more precise deterrent effect than a traditional fine].)  Additionally, the civil enforcement

---

[8]  Additionally, section 1214, subdivision (b), gives victims the right to receive on request a certified copy of the restitution order and defendant's financial disclosure.

mechanisms available to the victim, the fact that a failure to pay could result in a violation of probation, the fact that the obligation to pay extends beyond the period of probation, and the impact on a criminal defendant's credit are all adverse consequences that are appropriately characterized as "significant." Accordingly, we hold that the restitution order here is a significant consequence of petitioner's misdemeanor conviction and encompassed by the phrase "significant adverse collateral consequences" under rule 8.851(a)(1)(A).

Consequently, the Appellate Division should have appointed counsel to represent defendant on his appeal.

## II. Incarceration and Fine

### A. Additional Background

This matter is before us largely because of forms that were incorrectly filled out by counsel who represented defendant in the trial court. The notice of appeal was made on Judicial Council form CR-132 (rev. Jan. 1, 2016). In item 2, the section entitled, "Judgment or Order You Are Appealing," the box for "An order modifying the conditions of probation" was not checked. Instead, only the box labeled, "Other action" was checked and the following description of that action was provided by counsel: "The restitution judgment which was entered at the conclusion of the restitution hearing on October 31, 2016 in Department 15 at 8:30 a.m."

The request for appointment of appellate counsel was filed on the same day as the notice of appeal. As noted, item 3 of the form reads: "Describe the punishment the trial court gave you/your client in this case." Even though the form clearly instructs, "*check all that apply and fill in any required information*," the boxes for "Jail time," "A fine," and "Probation" were not checked and the lines for the amounts of the fine and the length of probation were left blank. Only the box for "Restitution" was checked, specifying the amount of $1,571.32. As noted, in item 4, which requires a description of the "*significant harm*" petitioner was "likely to suffer," counsel wrote: "[Petitioner] faces serious

14

financial harm as a result of the restitution judgment rendered in this case. The amount of restitution ordered is exponential; and the statutory standard, used to determine the restitution amount, was not upheld. Accordingly, such a judgment not only jeopardizes [petitioner's] financial well-being, but could later affect his credit should any sort of civil judgment be imposed."

Based on the request submitted by counsel, the Appellate Division summarily denied petitioner's request for appointed counsel in his appeal. Had the form been filled out correctly, defendant would have been appointed counsel and the resources expended to file, oppose, and address this writ petition would not have been expended. This is so because as both petitioner and the People now note, even if petitioner was not entitled to the appointment of appellate counsel on the basis of the restitution order, he is nevertheless entitled to counsel under rule 8.851(a)(1)(A), because his sentence included incarceration and a fine of more than $500. (See fn. 3, *ante*.)

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ issue directing the respondent court to: (1) vacate its order denying petitioner's request for the appointment of counsel to represent him on appeal, and (2) enter a new order granting that request. The previously issued stay is vacated upon finality of the opinion.

                                                    MURRAY          , J.

We concur:


     RAYE           , P.J.


     NICHOLSON      , J.


15