Filed 6/21/21  P. v. Hamburg CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>BRYAN STERLING HAMBURG,<br><br>  Defendant and Appellant. | 2d Crim. No. B306594<br>(Super. Ct. No. 19F-08079)<br>(San Luis Obispo County) |

Bryan Sterling Hamburg appeals the denial of his motions to withdraw his no contest plea (Pen. Code, § 1018)[1] to the crime of receiving stolen property (§ 496, subd. (a)), a felony.  He was sentenced to 16 months in county jail.  We conclude, among other things, that Hamburg has not shown the trial court erred by denying his motions.  We affirm.

---

[1] All statutory references are to the Penal Code.

FACTS

On October 4, 2019, police received a call about a burglary at Glenn's Repair shop. Someone had cut through a fence, removed a portable generator and gasoline from two lawnmowers. Surveillance video recorded the theft. It showed a male, wearing a mask, a hoodie, pants and boots, "siphoning gas" from the lawnmowers. Police found "boot prints" near the fence.

That same morning police were dispatched involving a call about another burglary at Solarponics. A "van had been broken into" and several "Milwaukee power tools" were missing. A glass door on the van had been shattered. Surveillance video from a nearby business showed a "mid 90s Ford Thunderbird" had pulled into the back lot and a driver who got out of the vehicle was wearing the same clothing as the suspect at the burglary at Glenn's Repair.

That same day near that scene, police saw Hamburg inside a Ford Thunderbird. Hamburg got out of the vehicle and started to walk away. He told a police officer that he was going to a friend's house. A police officer looked inside that vehicle and saw "Milwaukee tools." A parole agent told police that the Thunderbird belonged to Hamburg. He said he knew that because he saw Hamburg in that vehicle. Milwaukee power tools were in the Thunderbird. There was also a "rescue tool" containing a "window punch feature" that is used to "shatter windows," a "seatbelt cutter," and a pair of bolt cutters.

The boots Hamburg was wearing had "identical patterns" to the boot prints found at Glenn's Repair. The owner of the tools found in the Thunderbird identified them as the ones taken from his van. The stolen tools were worth more than $1,000.

On November 21, 2019, the People filed an information alleging Hamburg committed second degree burglary of a vehicle (§ 459), a felony (count 1); receiving stolen property (§ 496, subd. (a)), a felony (count 2); vandalism (§ 594, subd. (b)(2)(A)), a misdemeanor (count 3); petty theft (§ 484, subd. (a)), a misdemeanor (count 4); prowling (§ 647, subd. (h)), a misdemeanor (count 5); prowling (*ibid.*) (count 6); and possession of burglar tools (§ 466), a misdemeanor (count 7).

Pursuant to a plea agreement, Hamburg agreed to plead no contest to count 2 and the other six counts would be dismissed.

*The January 9, 2020, Hearing*

At the hearing, before Hamburg pled no contest, the trial court advised him that the plea would involve the waiver of various constitutional rights including his right to a jury trial.

During the hearing Hamburg said: "I have a question . . . I was here on interstate compact from Arizona, and would this mean it would be a probation violation there and I could get sentenced over there, too, after I'm done doing this sentence?"

The court: "I'm not sure."

Hamburg: "Because if that's the possibility, then I'd want to take it to trial, I'm not going to risk going and doing six years in prison for me pleading, you know. That would be like double jeopardy to me, but that's how I feel about it, you know."

The court: "Ms. Sutton-Buckley [Defense Counsel], do you want to address that?"

Defense counsel: "I'll have to talk to him about it."

The prosecutor: "Your Honor, I know that there was no violation filed here that we can't do that because of the interstate, but . . . I think [defense counsel] would have to contact Arizona to find out."

3

The court: "That's a good question to ask."

Hamburg: "I haven't been in touch with them in three years, you know, because I've been supervised here."

At this point the proceedings stopped so that Hamburg and his counsel could confer. After this conference, the court proceedings continued and the trial court asked: "So, Ms. Sutton-Buckley [Defense Counsel], will you look into that issue? Can you look into that issue before we come back on the 23rd?"

Defense counsel: "Yeah, I will, Your Honor. He understands."

Hamburg: "I understand."

The court: "And Mr. Hamburg, you need to understand *I don't know anything about that other case . . . .* Other than what we've talked about here in open court, has anyone made any promises to you or someone you care about in order for you to enter into your plea?" (Italics added.)

Hamburg: "No."

The court: "Counsel stipulate to a factual basis for the plea . . . ."

Defense counsel: "Yes, Your Honor."

Prosecutor: "Yes."

The court: "Mr. Hamburg, understanding your possible rights – your defenses, as well as the possible consequences of your plea . . . , . . . how do you plead to count 2, a felony, [section] 496 subdivision (a), receiving or purchasing stolen property?"

Hamburg: "No contest."

*The January 23rd Sentencing Hearing*

The trial court noted that there was a "negotiated disposition" so that Hamburg would be sentenced to "the lower

4

base term of 16 months county jail/prison." At this hearing no mention was made about the Arizona case.

*The March 26, 2020, "Motion to Withdraw Plea"*

Hamburg's defense counsel filed a motion to withdraw his no contest plea. She said she was "informed" that Hamburg wanted to withdraw his plea "due to insufficient counsel." She requested new counsel be appointed for Hamburg.

*The May 6, 2020, Motion to Withdraw Plea*

Hamburg's new counsel filed a motion to withdraw the plea claiming good cause because "Arizona is seeking extradition" based on that plea. He claimed Hamburg would not have entered the plea had he been advised "Arizona would be seek[ing] extradition."

The People filed an opposition to the motion. They claimed, among other things, that Hamburg did not "set forth a single corroborative fact to support the contention that the plea was involuntarily made or made under a mistake of fact." They noted, "[T]here is no evidence from [Hamburg's] former attorney to corroborate [his] claims."

The trial court held several hearings. At those hearings Hamburg did not testify, call any witnesses, or present evidence. The court denied the motions. It ruled, among other things, that Hamburg did not show "good cause" to set aside the plea. It said, "[T]he purported case out of Arizona, it's not before this court." The Arizona development was not a new fact. Hamburg "was aware that he was on interstate compact out of Arizona. And, in fact, he raised the issue at the plea hearing." Hamburg "was aware that there was a possibility of a probation violation in Arizona, whether or not one had been filed as of that date." The

5

court said it "has no ability to determine what a court in Arizona will do."

## DISCUSSION

*Denying the Section 1018 Motions to Withdraw Hamburg's Plea*

Hamburg contends the trial court erred by denying his motions to withdraw his no contest plea.

The People respond that the trial court lacked jurisdiction to grant the motions because they were made under section 1018.

Hamburg's judgment of conviction was entered in January 2020. His motions to withdraw the plea were filed on March 26, 2020, and May 11, 2020. The motions were made pursuant to section 1018. But they were made *after* the entry of judgment.

"[S]ection 1018 . . . only authorizes a trial court to allow a defendant to withdraw a guilty plea before judgment is entered." (*People v. Gari* (2011) 199 Cal.App.4th 510, 521.) Section 1018 provides the court may grant the motion to withdraw the plea "[o]n application of the defendant *at any time before judgment*." (Italics added.) Consequently, Hamburg has not shown error by the court's denial of these motions made under section 1018.

The People claim that even had Hamburg's motions been filed as "non-statutory" motions to withdraw his plea, the result does not change. We agree. (*People v. Kim* (2009) 45 Cal.4th 1078, 1096 ["[A] nonstatutory motion to vacate has long been held to be the legal equivalent of a petition for a writ of error *coram nobis*"].) That usually involves the discovery of new evidence. But "[t]o qualify as the basis for relief on *coram nobis*, newly discovered facts must establish a basic flaw that would have prevented rendition of the judgment." (*Id.* at p. 1103.)

But whether it is a statutory or a non-statutory motion, there must be a showing of good cause. Good cause for a motion

6

to vacate a plea " 'must be shown by clear and convincing evidence.' " (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.) "Grant or denial of a motion lies within the trial court's sound discretion . . . ." (*Ibid.*) "Guilty pleas resulting from a bargain should not be set aside lightly . . . ." (*Ibid.*) Consequently, an appellant must meet a strong burden to establish a trial court's abuse of discretion in deciding not to set aside the plea. (*Ibid.*)

*Court's Duty to Advise on Collateral Consequences*

Hamburg contends the trial court did not properly advise him of the possible violation of his Arizona probation conditions that could result if he entered the plea.

The People respond that the "trial court correctly concluded [that] there was no duty to warn [Hamburg] about a potential *collateral consequence* of his plea, such as the fact that it could potentially trigger additional sanctions in his Arizona case." (Italics added.) They claim the court did not misadvise him about the Arizona consequences. We agree.

The trial court has a duty to properly advise the defendant about consequences of a conviction before taking a guilty or no contest plea. "While an advisement is required for a direct consequence, no advisement is required for 'collateral' consequences." (*Harris v. Appellate Division of Superior Court* (2017) 14 Cal.App.5th 142, 150.) "A 'collateral' or 'indirect' consequence is one that 'does not "inexorably follow" from a conviction of the offense involved in the plea.' " (*Ibid.*) "The rule requiring advisement of direct consequences and not collateral consequences is a judicially declared rule of state criminal procedure." (*Ibid.*)

The "collateral consequences for which no advisement need be given prior to defendant entering a guilty or no contest plea"

7

include the "possibility that a guilty plea might result in a revocation of probation and a prison sentence." (*Harris v. Appellate Division of Superior Court, supra*, 14 Cal.App.5th at p. 150, fn. 5.)

Hamburg claims the trial court had a duty to properly advise him about the impact of the conviction on his Arizona conviction and Arizona probation status. But what the state of Arizona might, or might not, do as result of this California conviction was a collateral consequence that the court was not required to provide advice about before accepting a plea. (*Harris v. Appellate Division of Superior Court, supra*, 14 Cal.App.5th at p. 150, fn. 5; *People v. Martinez* (1975) 46 Cal.App.3d 736, 745 ["a subsequent revocation of probation is a 'collateral' rather than a 'direct' consequence of the guilty plea, and thus defendant need not be advised of such consequences"]; *People v. Searcie* (1974) 37 Cal.App.3d 204, 212 [a collateral consequence includes "possibility of affecting sentence in an independent state court case"].

*Did the Trial Court Mislead Hamburg Before He Pled?*

Hamburg suggests the trial court misadvised, misled him, or gave him a false sense of security, by failing to state that the court "had no control over Arizona and whether his plea in this case would trigger a violation of probation in Arizona." He claims the court "should have advised that he could go forward with the plea or go to trial."

"When the ground for withdrawing the guilty plea is the omission of advisement of the consequences of the plea, the defendant must show ignorance: that he was actually unaware of the possible consequences of his plea." (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1619.)

Here Hamburg certainly knew the potential for probation violation problems in Arizona.  As the prosecutor noted, Hamburg "raised [the] issue himself," showing "he was aware of the possibility."  Moreover, the trial court did not mislead him about the Arizona consequences.  Instead, it candidly told Hamburg about its lack of knowledge about the Arizona case.

Before making the plea, Hamburg said, "I have a question . . . I was here on interstate compact from Arizona, and would this mean it would be a probation violation there and I could get sentenced over there, too, after I'm done doing this sentence?"

The trial court candidly responded, "I'm not sure."  It went on to state, "Mr. Hamburg, you need to understand *I don't know anything about that other case . . . .*" (Italics added.)

The trial court consequently did not provide Hamburg with any false sense of security about the consequences of this plea relating to the Arizona case.  Given the court's answer, any reasonable defendant would know the court could not give any guarantee about what would happen in the Arizona case.  Knowing this, Hamburg, decided to plead no contest.  He knew the possibility of Arizona authorities initiating proceedings, and may not have known "the degree of the risk" of that happening.  But gambling on the calculation of "the degree of the risk" is not a ground to set aside the plea. (*People v. Castaneda, supra,* 37 Cal.App.4th at p. 1619.)  Where the defendant knows the circumstances, but in evaluating the *known risk* guessed wrong, he does not show grounds for relief.  (*Ibid.*; *People v. Tidwell* (1946) 75 Cal.App.2d 476, 478.)

Hamburg also knew no promises had been made.  The trial court asked Hamburg, "Other than what we've talked about here in open court, has anyone made any promises to you or someone

9

you care about in order for you to enter into your plea?"
Hamburg: "No."

Hamburg's trial counsel stipulated to a factual basis for the plea.

The trial court asked Hamburg, "[U]nderstanding . . . *the possible consequences . . . , . . .* how do you plead to count 2, a felony, [section] 496 subdivision (a), receiving or purchasing stolen property?" (Italics added.) Hamburg: "No contest." The court accepted the no contest plea after finding Hamburg "freely, voluntarily, knowingly, and intelligently waived [his] rights." Hamburg has not shown error on this ground.

*Ineffective Assistance of Counsel*

Hamburg contends the trial court erred by denying the motions to withdraw his plea based on ineffective assistance of counsel. He claims his attorney failed in her duty to confirm what would happen in the Arizona case.

"The pleading – and plea bargaining – stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel . . . ." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.) "Unless a defendant establishes the contrary, [courts will] presume that 'counsel's performance fell within the wide range of professional competence . . . .' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674.) To establish ineffective assistance, the defendant must meet two prongs. The defendant must prove: 1) counsel's performance was deficient, and 2) this deficient performance caused prejudice to the defendant's case. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) A defendant's self-serving statement is "insufficient in and of itself to sustain the defendant's burden of proof." (*In re*

10

*Alvernaz, supra*, 2 Cal.4th at p. 938.) "[It] must be corroborated independently by objective evidence." (*Ibid*.)

The two motions Hamburg filed were procedurally insufficient to meet his burden to show that his plea was the result of ineffective assistance of counsel.

The first motion, filed in March 2020, did not contain any declaration, or statement by Hamburg to support his ineffective assistance claim. His counsel merely stated, "I *am informed* by the defendant BRYAN STERLING HAMBURG that he wishes to withdraw his plea to the above charge due to insufficient counsel . . . ." (Italics added.) Such a conclusory hearsay statement was insufficient to meet the required standard. (*In re Alvernaz, supra*, 2 Cal.4th at p. 938.)

The second motion filed in May by different counsel was five pages long and it was essentially only a set of points and authorities. There was no declaration attached. No statement was signed by Hamburg. There was only a conclusory hearsay remark by his counsel in the motion that "Mr. Hamburg only entered this plea because he understood that he would not face additional sanctions in Arizona." Counsel also said that "Arizona is seeking extradition" and "[Hamburg] would not have entered a plea if [he] had been advised that Arizona would be seek[ing] extradition."

But there was no factual showing about what his trial counsel specifically did or said that constituted ineffective assistance. (*People v. Bolin* (1998) 18 Cal.4th 297, 333 ["counsel's decisionmaking must be evaluated in the context of the available facts"].) This motion did not contain *any facts* about 1) whether his counsel contacted the Arizona authorities; 2) what, if anything, those authorities told his counsel; 3) what his counsel

11

told Hamburg about the Arizona case; or 4) what his counsel advised him to do. There was also a conference with his counsel before Hamburg entered his plea. But there were no facts about what happened at that conference or what advice was given.

The People objected to this motion claiming: 1) there was no proof of good cause to withdraw the plea, 2) Hamburg has not "set forth a single corroborative fact," 3) there is "no evidence from [Hamburg's] former attorney to corroborate [his] claims," and 4) Hamburg has failed to attach "any documentation." The People added, "[They] have not received any information regarding the violation of the Arizona case other than Arizona attempting to extradite [Hamburg]. [T]here has been no evidence presented that the plea in this case is the only basis for that violation."

The People claimed this motion was "subject to summary dismissal." "Solemn declarations in open court carry a strong presumption of verity." (*Blackledge v. Allison* (1977) 431 U.S. 63, 74.) "The subsequent presentation of conclusory allegations unsupported by specifics *is subject to summary dismissal . . . .*" (*Ibid.*, italics added.) Here these two inchoate motions were bereft of the required evidence or "specifics." (*Ibid.*; *In re Alvernaz*, *supra*, 2 Cal.4th at p. 938.)

The trial court could have, but did not, summarily dismiss these motions. It held hearings. But at these hearings no witnesses were called. Hamburg provided no testimony. Hamburg's trial counsel was not there. No declarations were introduced. No evidence was presented.

During one of the hearings on this motion, Hamburg made an unsworn remark that *the prosecutor* was the one who promised there would be no Arizona consequences as a result of

12

his plea. He said, "I was promised by Ms. Chabra [the prosecutor] that this wouldn't happen and it happened." But that is not a claim of a promise made *by his trial counsel*.

Moreover, Hamburg's claim that the prosecutor made a promise that there would be no Arizona consequences for the plea is not supported by the record. At the hearing before the plea was entered, the prosecutor merely said, "I know that there was no violation filed here [by Arizona]." But she also said that Hamburg's trial counsel "would have to contact Arizona to find out." Those statements do not support the claim of a promise made to Hamburg. The prosecutor did not know what would happen in the future which is why she suggested contacting the Arizona authorities. Even Hamburg's counsel at one of the motion to vacate hearings said he did not believe that the prosecutor had made the promise Hamburg had claimed.

Hamburg contends his counsel's performance was deficient because "competent counsel would have verified the information with Arizona authorities before allowing him to enter a change of plea."

But this conclusion is based on a series of assumed, but unproven facts. Hamburg did not present evidence about what his counsel did. He did not call his trial counsel to testify or explain her position. There was no showing about what information was available to counsel from the Arizona authorities at the time of his plea, at sentencing, or thereafter. There was no evidence that the Arizona extradition request was related to his plea in this case. There was no showing that the plea offer could remain open for an extended indefinite period. Hamburg did not produce evidence about what was agreed to, or understood, at the unreported conference he had with his attorney at the January

13

9th hearing.  Nor did he explain why he agreed to enter his plea immediately after that conference.

Because of this undeveloped factual record, this claim of deficient performance cannot be sustained.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)  Moreover, from the failure to call his trial counsel, or present *any* evidence on the factual issues highlighted above, the trial court could reasonably draw negative inferences on the credibility of his claims.  (Evid. Code, § 412; *People v. Ochoa* (1985) 165 Cal.App.3d 885, 888-889; *People v. Vaughn* (1968) 262 Cal.App.2d 42, 55.)

*Hamburg's Showing of Prejudice*

Hamburg has not shown deficient performance of counsel, but even had he made such a showing, the trial court could reasonably find he did not show prejudice.

Hamburg contends the trial court erred because he proved he would not have agreed to the plea bargain had he been advised of the Arizona consequences.

But this claim is "a factual question for the trial court." (*People v. Araujo* (2016) 243 Cal.App.4th 759, 763.)  "It is up to the trial court to determine whether the defendant's assertion is credible . . . ."  (*People v. Martinez* (2013) 57 Cal.4th 555, 565.)  A defendant who is "highly likely to lose at trial" and "facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."  (*Lee v. United States* (2017) _ U.S. _ [198 L.Ed.2d 476, 486].)  Moreover, a defendant will not prevail where he or she failed to present corroborating "contemporary evidence to substantiate" his or her "post hoc assertions" about how differently he or she would have pled.  (*Id.* at p. _ [*id.* at p. 487].)

14

Here the trial court could reasonably find Hamburg's claim about not accepting the plea bargain and taking the case to trial had he known the Arizona consequences was not credible. The court's statements before accepting Hamburg's plea show that there was no assurance that there would not be negative Arizona consequences for making the plea.

In denying his motions, the trial court found before making the plea Hamburg said, "*[N]o one had made any promises to him* or a loved one in order for him to plea no contest." (Italics added.) Knowing the potential consequences, Hamburg still decided to plead no contest. The trial court found, "Hamburg confirmed that he pled no contest, having understood his rights, defenses, and the possible consequences of his plea."

There was also no corroborating evidence to show that the subsequent Arizona extradition request was related to, or the result of, Hamburg's plea in this case. At one of the hearings on the motion to vacate, Hamburg's counsel conceded that the defense had *no evidence* to show that the Arizona request was related to Hamburg's plea. He said, "I think common sense says it was the plea and the conviction, but *this idea is speculation because we don't know . . . .*" (Italics added.) But it is the defendant's burden to present the corroborating evidence, not speculation. In denying his motions, the trial court highlighted Hamburg's failure of proof on this critical issue by stating, "*[A]s of today, the court still does not know if there is a pending supervision violation in Arizona.*" (Italics added.)

Hamburg's claim on appeal that his counsel's deficient performance caused prejudice is undermined by his statement at the hearing that he relied to his detriment on the prosecutor's

15

promise.  In making that claim at the hearing, he did not mention any reliance on a promise by his trial counsel.

Moreover, the trial court could also reasonably reject the credibility of Hamburg's claim that he would have gone to trial instead of the plea bargain.  The plea bargain was very favorable to Hamburg.  He was charged with seven counts including felony burglary.  As a result of the plea bargain, six counts were dismissed.  Because of the plea agreement, he received the low term for his felony conviction.  In his motions Hamburg made no showing of defenses to the seven counts if they were taken to trial.  The People had strong evidence, including video surveillance footage, boot prints matching his boots, the stolen tools in the Ford Thunderbird, Hamburg's presence near the scene, his connection to the Thunderbird and the burglary tools in that car.  For a conviction on seven counts, Hamburg could face a significantly longer period of incarceration.  The probation report listed four factors in sentencing "aggravation," including his prior convictions and adjudications and his poor performance on parole/probation.  He had a criminal record in two states.  As to factors in sentencing "mitigation," the probation report listed that there were "[n]one."

The trial court did not abuse its discretion in deciding not to set aside the plea.

### DISPOSITION

The order denying Hamburg's motions is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.          TANGEMAN, J.

16

Hernaldo J. Baltodano, Judge

Superior Court County of San Luis Obispo

_____

Susan B. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.