Filed 5/9/23  P. v. Nyambi CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>TITA NYANDJA NYAMBI,<br><br>     Defendant and Appellant. | A165692<br><br>(Humboldt County<br>Super. Ct. No. CR1903480) |

Defendant Tita Nyandja Nyambi appeals from a judgment of conviction after he pleaded no contest to burglary (Pen. Code § 459)[1] and receiving stolen property (§ 496, subd. (a)), was admitted to but later terminated from the deferred entry of judgment program, and was sentenced to 16 months in county jail.  His appointed counsel has asked this court to review the record to determine whether there are any arguable issues on appeal pursuant to *People v. Wende (*1979) 25 Cal.3d 436 (*Wende*).  Defendant's counsel informed him of his right to file a supplemental brief, and he did not do so.  After reviewing the record, we conclude there are no arguable issues requiring further briefing, and we affirm the judgment.

---

[1] Further undesignated statutory references are to the Penal Code.

1

## BACKGROUND

On May 26, 2021, an information charged defendant with burglary (§ 459) and receiving stolen property with a value exceeding $950 (§ 496, subd. (a)).[2] Evidence at the preliminary hearing established the following: On July 22, 2019, the owner of a residence in Arcata stated that when he arrived home from work, he saw defendant exiting his garage with two of his backpacks. The owner showed the responding police officer some items that did not belong to him, including a trash bag containing mail addressed to another individual in Arcata and other items. The next day, the officer responded to that address. The owner of that residence reported that someone had broken into his home over the weekend and several of his items worth around $3,000 had gone missing. The owner was shown items in the trash bag found the day before and identified some of the items as his.

Meanwhile, at least eight other criminal cases were filed against defendant, charging him with a slew of misdemeanors. On June 7, 2021, the trial court held a pre-trial conference, where defendant appeared with his appointed counsel, Casey Russo. The defense and the People indicated they had reached negotiated dispositions in the eight misdemeanor cases and in the felony case.

Pursuant to the plea bargain, and after advisements and waivers, defendant pleaded guilty to the following misdemeanor charges: vandalism, assault and battery, as well as two counts of possession of paraphernalia (case no. CR1903319); battery and petty theft (case no. CR2003190); petty

---

[2] It appears the charges were brought under separate case numbers (CR1903480 and CR1903522). The cases were consolidated and proceeded under number CR1903480 (and we refer to them collectively as the "felony case" or the "instant case").

2

theft (case no. CR2003553); petty theft (case no. CR2100100); battery and assault (case no. CR2101413); obstructing and delaying an officer and driving without a license (case no. CR1800989). He also pleaded no contest to trespassing (case no. CR2101414). The eighth case, number CR2101415, was dismissed. The court granted defendant separate one-year terms of probation in five of those cases (CR1903319, CR2003190, CR2100100, CR2101414, and CR1800989), conditioned, among other things, on him obeying all laws. In case number CR2003553, the court sentenced defendant to 10 days in county jail. And in case no. CR2101413, he was sentenced to 60 days in county jail.

Turning to the felony case, the court again gave defendant various advisements, including the consequences of his plea. In discussing the negotiated disposition of placing defendant in the deferred entry of judgment (DEJ) program, the court stated, "In your [DEJ], if judgment should enter, that would subject you to three years and eight months in custody . . . ." This exchange followed.

"THE COURT: Okay. So if you were to violate the terms of your deferred entry of judgment, then the People could petition for the setting aside of the deferred entry of judgment and ask that the matter go to judgment and sentence. [¶] You understand that?

"THE DEFENDANT: When you say, 'Go to judgment,' does that mean go to trial?

"THE COURT: No.

"THE DEFENDANT: Go directly to the term.

"THE COURT: Sentencing. It would go to sentencing. And at that time it would be referred to the Probation Department for pre-sentence investigation.

"THE DEFENDANT: Okay."

3

Defendant pleaded no contest to burglary and receiving stolen property.[3]  The parties stipulated that the preliminary hearing transcript furnished a factual basis for the plea.  The court accepted the plea and placed defendant on DEJ for one year.  The court then advised defendant that as a condition of DEJ, "You [are] required to obey all laws, violate no criminal statutes."  The court again admonished defendant, "You've entered a plea . . . in this matter so it's not going to go to trial.  If you violate the terms of your [DEJ], then it would go to sentencing."

Subsequently, another criminal case was filed against defendant (no. CR2103927), charging him with petty theft and two drug-related offenses.  On December 28, 2021, the court held a pretrial conference, where defendant appeared with another deputy public defender, Emily Wingett.  The parties reached negotiated dispositions in the new misdemeanor case (no. CR2103927), as well as in the five misdemeanor cases in which defendant had pleaded guilty and had been granted probation on June 7, 2021 (nos. CR1800989, CR1903319, CR2003190, CR2100100, and CR2101414).

In the new misdemeanor case, defendant pleaded guilty to the petty theft charge, and in exchange, the two other counts were dismissed.  The court found the plea was "entered into knowingly, intelligently, and voluntarily" and placed defendant on a one-year term of probation.

In the five prior misdemeanor cases, defendant admitted he had violated the terms of his probation.  In three of those cases, the court

_____

[3] The minutes for the June 7, 2021 hearing state defendant pleaded guilty to the felony charges.  The court later issued another minute order stating that the minutes should reflect that defendant pleaded no contest to the felony charges.

reinstated probation and imposed 13-day jail terms as a condition of probation. In two of those cases, the court also reinstated probation and imposed 15-day jail terms as a condition, but stayed execution of the jail terms.

On January 3, 2022, the court held a DEJ review hearing. The prosecutor stated her intention to file a motion to terminate the DEJ, in light of defendant's recent plea to the new misdemeanor on December 28, 2021. Defendant then expressed confusion about the proceedings—he was under the impression that the plea agreement he entered into at the December 28, 2021 hearing included and thus resolved the DEJ and the felony case. The hearing was continued.

That same day, the People filed a motion to terminate the DEJ, reinstate criminal proceedings, and enter judgment. The basis for the motion was that defendant had violated the condition of the DEJ requiring him to obey all laws by committing the crime to which he had pleaded guilty on December 28, 2021.

At some point later, another criminal case was filed against defendant (no. CR2200789), again charging him with theft-related crimes. At the scheduled trial in that case and the DEJ review on April 29, 2022, defendant made an oral motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to substitute attorney Russo for new counsel. Defendant argued there was "friction" between him and counsel, he essentially had been told he was guilty with respect to the felony plea and "should just be pleading to whatever the Court is going to give [him]," and certain motions or petitions should have been filed on his behalf. Counsel was invited to and did respond in detail, and defendant argued further. The court denied the motion.

On May 3, 2022, the court held a hearing regarding the most recent

5

misdemeanor case (no. CR2200789) and the DEJ review. Defendant appeared with another deputy public defender, Melanie McNeely. At the outset, case number CR2200789 was dismissed.

The parties and the court then spent the remainder of the morning session and the afternoon sessions discussing the People's motion to terminate the DEJ. Defendant again expressed confusion with the status of the DEJ, explaining he "thought that we were closing out the DEJ with that plea" at the December 28, 2021 hearing, and that "pleading guilty meant it was part of the deal and . . . then going to also swap that DEJ." His counsel argued among other things that the court at the December 2021 hearing did not advise defendant that his plea to the misdemeanor potentially had the consequence of violating the DEJ. Counsel also raised an "alleged possible issue of ineffective assistance of counsel" concerning "the misdemeanor issue and his advisements of his rights at th[e] time" of the plea on December 28, 2021. The prosecutor responded, "[T]here is nothing in that plea deal from reading the record that would make it an illegal plea or some kind of plea that should be withdrawn. [Defendant] knew what he was doing that day when he agreed."

After hearing these arguments, the court understood defendant was requesting that "he should be able to withdraw his plea, pursuant to . . . Penal Code [section] 1018, in CR2103927, because he was not advised that this would violate the DEJ." The court cited the law regarding its duty to advise a defendant of direct, rather than collateral, consequences of a plea. The court found analogous *People v. Searcie* (1974) 37 Cal.App.3d 204, which holds that collateral consequences include the possibility of probation revocation in another case.

The court then addressed defendant directly and asked him whether he

wished to withdraw his plea in case number CR2103927. Defendant responded he did. The court denied the request. It found the plea in that case was made "expressly, knowingly, freely and voluntarily," and "not done either by coercion, misinformation." It also found that the possibility that the plea would result in a violation of the DEJ was a collateral consequence the court was not obligated to advise defendant on. The court also pointed out that "in 3927, Mr. Nyambi did sign the line that said that the plea in this case would result in a violation of any other probation or parole." Finally, the court stated, "rather than showing IAC that these pleas were likely entered into," defendant was "cleverly trying to dodge the DEJ issue. . . . It didn't work out because the DEJ is now here." Accordingly, the court found that defendant violated the condition of the DEJ requiring him to obey all laws, terminated the DEJ, and referred the matter for sentencing.

On June 10, 2022, the court sentenced defendant to 16 months in county jail and imposed various fines and fees.

On July 22, 2022, defendant filed a notice of appeal and obtained a certificate of probable cause. The request for the certificate related that the basis for the appeal was that the "[s]entence was the result of a deferred entry of judgment. Defendant believes the deferred entry of judgment was not legal."

## DISCUSSION

We have conducted an independent review of the record and conclude there are no arguable issues requiring further briefing.

Any possible claim that defendant's placement into the DEJ program pursuant to the plea agreement contemplated an unauthorized sentence is foreclosed from appellate review. "[D]efendants are estopped from complaining of sentences to which they agreed." (*People v. Hester* (2000)

7

22 Cal.4th 290, 295 (*Hester*).) "Where the defendants have pleaded guilty in return for a specified sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack fundamental jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*Ibid.*, italics omitted.)

Here, defendant pleaded no contest to burglary and receiving stolen property in exchange for his placement in the DEJ program, whereby the court "does not enter judgment, but 'defer[s]' such entry indefinitely, perhaps permanently." (*In re Mario C.* (2004) 124 Cal.App.4th 1303, 1308; see *People v. Cisneros* (2000) 84 Cal.App.4th 352, 356 [if a defendant has performed satisfactorily during the period in which DEJ was granted, at the end of that period, the criminal charges are dismissed], citing §§ 1000.3, 1000.4.) Defendant avoided a harsher punishment by entering into the plea agreement and is therefore estopped from complaining about the punishment to which he agreed.

Regarding the *Marsden* motion, the court heard extensively from defendant regarding complaints of ineffective representation and defense counsel's responses. To the extent there was a credibility question between defendant and counsel at the hearing, "[t]he court was entitled to accept counsel's explanation." (*People v. Webster* (1991) 54 Cal.3d 411, 436.) There was no error in the manner the court handled or resolved that motion.

We also discern no arguable issues with respect to any claim that the order terminating the DEJ and resultant sentencing were unlawful. The termination of the DEJ was based on defendant's commission of a crime, to which he pleaded guilty on December 28, 2021 in a separate case

(no. CR2103927). Defendant sought to withdraw that plea mainly on the grounds that the court did not properly advise him that it could result in a violation of the terms of the DEJ. Initially, we note that defendant's notice of appeal does not encompass case number CR2103927, much less include a certificate of probable cause with respect to that case. But even if we were to consider the validity of the plea in that case insofar as it affects the validity of the termination of the DEJ in this case, we see no error.

Although a court must disclose all of the direct consequences of a guilty plea before accepting a plea, it need not advise a defendant of "collateral consequences" that do not inexorably follow from the plea. (*People v. Arnold* (2004) 33 Cal.4th 294, 309.) In the analogous context of probation, courts have held a subsequent revocation of probation is a "collateral" rather than a "direct" consequence of the guilty plea, and thus a defendant need not be advised of such a consequence. (See *People v. Searcie, supra*, 37 Cal.App.3d at p. 211; accord, *In re Resendiz* (2001) 25 Cal.4th 230, 243, fn. 7, overruled on another ground in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370–371; *Harris v. Superior Court* (2017) 14 Cal.App.5th 142, 150; *People v. Martinez* (1975) 46 Cal.App.3d 736, 745.) Applying that principle here, the possibility of the termination of the DEJ and subsequent jail sentence in the felony case was a collateral consequence of the guilty plea in the misdemeanor case. Further, the trial court gave defendant clear warnings, several times, of the potential consequences of violating the conditions of DEJ when he pleaded to the felonies. (See *People v. Searcie, supra*, 37 Cal.App.3d at p. 211; see also *People v. Martinez, supra*, 46 Cal.App.3d at pp. 745–746 ["It would be utter nonsense to hold that such warnings counted for nothing and should have been repeated at the time of plea to the second offense"].)

As for the claim of ineffective assistance of counsel associated with the

plea in case number CR2103927, because the record does not disclose any factual support for the claim, it is not cognizable in this proceeding. "Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.  In all other cases the conviction will be affirmed and the defendant relegated to habeas corpus proceedings at which evidence [outside of] the record may be taken to determine the basis, if any, for counsel's conduct or omission."  (*People v. Fosselman*  (1983) 33 Cal.3d 572, 581–582; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

While we have selected certain matters for discussion, we have scrutinized the record in its entirety; there are no other arguable issues that require further briefing.

## DISPOSITION

The judgment is affirmed.

10

_____
Richman, J.

We concur:


_____
Stewart, P.J.


_____
Miller, J.


*People v. Nyambi* (A165692)

11